**UNITED STATES of America,
Appellee,**

v.

**Francisco LAKE, Defendant–Appellant.**

**Docket No. 04–3238–CR.**

United States Court of Appeals, Second Circuit.

Argued: June 20, 2005.

Decided: Aug. 15, 2005.

Robin C. Smith, Brooklyn, N.Y., for Defendant–Appellant.

Jack Smith, Asst. U.S. Atty., Brooklyn, N.Y. (Roslynn R. Mauskopf, U.S. Atty., Susan Corkery, Asst. U.S. Atty., on the brief), for Appellee.

Before: NEWMAN and SOTOMAYOR, Circuit Judges; and CHIN,* District Judge.

JON O. NEWMAN, Circuit Judge.

This sentencing appeal concerns the issue of whether a sentencing judge's error in mandatorily applying the Sentencing Guidelines prior to the Supreme Court's decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), is harmless. Defendant–Appellant Francisco Lake appeals from a judgment of the United States District Court for the

---

* Honorable Denny Chin, United States District Judge for the Southern District of New York, sitting by designation.

Eastern District of New York (Frederic Block, District Judge) convicting him on a plea of guilty to Hobbs Act, narcotics, and firearms offenses and sentencing him principally to 540 months' imprisonment. Because Lake preserved for appeal his objection to the mandatory use of the Guidelines and because the Government has not sustained its burden of proving that the *Booker* sentencing error was harmless, we remand for resentencing.

## Background

Lake was arrested for his participation in the robberies of two jewelry stores. Lake belonged to a criminal association called the Padmore Crew, led by Vere Padmore, which included, among others, two members of the New York Police Department, Jamil Jordan and Anthony Trotman. The Padmore Crew functioned as a loosely affiliated criminal network perpetrating robberies of jewelry stores and known drug dealers. The group's criminal offenses included several homicides. Trotman and Jordan supplied the ring with the identities of their drug-dealer victims, as well as police uniforms to assist in the robberies.

In September 1999, in accordance with a cooperation agreement, Lake pled guilty to a four-count superseding information charging (1) a Hobbs Act conspiracy to rob drug dealers and business employees and threatening violence in furtherance of such robberies, in violation of 18 U.S.C. §§ 1951, 3551; (2) a Hobbs Act substantive offense involving the robbery of employees of a jewelry store, in violation of 18 U.S.C. §§ 2, 1951, 3551; (3) possession with intent to distribute and distribution of five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. §§ 2, 3551; and (4) use and possession of a firearm in relation to a crime of violence, the robbery of a drug dealer, in violation of 18 U.S.C. §§ 924(c)(1), 2, 3551.

The presentence report ("PSR") assigned Lake a total offense level of 40 in Criminal History Category ("CHC") VI,[1] yielding a Guidelines range of 360 months to life in prison, with a mandatory five-year consecutive sentence, pursuant to 18 U.S.C. § 924(c)(1) and U.S.S.G. § 2K2.4(a)(2).

The Government moved for an upward departure for understatement of criminal history and obstruction of justice for the various lies Lake told while "cooperating" with authorities.

Lake objected to some of the enhancements recommended by the PSR, prompting the District Court to conduct a *Fatico* hearing. Lake also objected, on Sixth Amendment grounds, to any enhancement of his sentence based on facts not found by a jury, relying on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and the argument presented to the Supreme Court in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which was then pending.

The District Court found that Lake had been involved in several robberies and the murders of four persons. He called Lake an "abject criminal of the highest nature," "a wanton murderer," and "a person who doesn't belong out on the street in society," adding, "If ever there was a situation where somebody needed to be incapacitat-

---

**1.** Lake's CHC score was enhanced by 3 points because he committed the instant offenses while on probation and within two years of release from imprisonment. As we have previously ruled, judicial fact-finding of facts concerning a prior conviction does not encounter Sixth Amendment objections under *Booker. See United States v. Fagans,* 406 F.3d 138, 141–42 (2d Cir.2005).

ed to protect the public, this is one of those cases."

Applying a grouping analysis, *see* U.S.S.G. §§ 3D1.1–.5, which is not challenged on appeal (beyond the objection to judicial fact-finding), the District Court determined that the adjusted offense level was 38 and placed Lake in CHC V, yielding a sentencing range of 360–life. The Court denied Lake's motion for an acceptance of responsibility reduction, *see* U.S.S.G. § 3E1.1, and the Government's motions for upward departures.

The Court sentenced Lake to 240 months on Counts One and Two, to run concurrently; 480 months on Count Three, concurrent with Counts One and Two; and a mandatory, consecutive 60–month sentence on Count Four. The total sentence was therefore 540 months (45 years). The Court also imposed restitution in the amount of $1,000,564.75, and a $400 special assessment.

Based solely on the facts to which he allocuted, Lake faced a statutory mandatory minimum sentence of 15 years (10 years on Count Three plus 5 years, consecutively, on Count Four).

**Discussion**

Because Lake properly preserved for appellate review his Sixth Amendment objection to Guidelines enhancements based on judicial fact-finding, he is entitled to resentencing, *see United States v. Fagans,* 406 F.3d 138, 142 (2d Cir.2005) (remand for resentencing where statutory objection to mandatory use of the Guidelines properly preserved), unless the Government can sustain its burden of proving that the sentencing error was harmless, *see United States v. Olano,* 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).[2]

Once the Supreme Court fundamentally altered federal sentencing procedures by ruling in *Booker* that the Guidelines were no longer required to be applied, it became difficult for the Government to sustain its burden of proving that a *Booker* error was harmless. Although some sentences imposed under the pre-*Booker* regime would not have been different had the sentences been imposed under the post-*Booker* regime, it will usually not be easy to divine with certainty that the sentencing judge would have imposed the same sentence.[3]

**2.** In *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), we said that "[a] remand for determination of *whether* to resentence is appropriate in order to undertake a proper application of the plain error and harmless error doctrines." *Id.* at 117. That statement was dictum with respect to harmless error because, in the absence of any indication that the sentencing error in *Crosby* had been preserved, we were applying plain error analysis. *See United States v. Williams,* 399 F.3d 450, 454 (2d Cir.2005) (amplifying rationale for *Crosby* remand "where an unpreserved error violates the Sixth Amendment"). The panel that decided *Crosby* had no occasion to rule on the application of the harmless error doctrine to review of a preserved sentencing error.

Since *Crosby,* we considered a preserved error in a pre-Booker sentence in *Fagans.* Implicitly concluding that the error—the mandatory use of the Guidelines—had not been shown to be harmless, we remanded for resentencing, rather than order a *Crosby* remand for determination of whether, absent the error, a non-trivially different sentence would have been imposed. *See* 406 F.3d at 142. *Fagans* thus abrogated the dictum in *Crosby* that had indicated that a *Crosby* remand would be appropriate for application of the harmless error doctrine as well as the plain error doctrine. In the pending case, therefore, the issue upon review of the preserved error is whether we should affirm, if the Government has shown the error to be harmless, or remand for resentencing, if such a showing has not been made.

**3.** We frame the inquiry in terms of whether the original sentence *would have been* different, not whether, if resentencing were to occur, the new sentence *would be* different. Whether an error is alleged to be harmless with respect to a trial or a sentencing, the

We have recognized that a "rare" case may arise where we can confidently say that a sentencing error was harmless, as occurs in circumstances where a statutory mandatory minimum prevents the sentencing judge from giving a lesser sentence after *Booker* than the one imposed pre-*Booker*. *See United States v. Sharpley,* 399 F.3d 123, 127 (2d Cir.2005).

In the pending case, the Government urges that Judge Block's statements in imposing sentence provide sufficient indication that the sentence would have been the same under the post-*Booker* regime. The Judge said, among other things:

> This sentence is necessary for every reason that sentencing is necessary; for punishment, to incapacitate you during your adult life to protect the public from the type of violence you have visited upon the public when you were free from incarceration.

The Government also contends that the applicable guideline range of 360 months to life did not constrict Judge Block's sentencing discretion because he selected a sentence of 480 months on Count Three, indicating his view that neither a lower nor a higher sentence was warranted.

Although these arguments are not without force, we believe they overlook significant aspects of sentencing under the post-*Booker* regime. First, the fact that a judge selects a sentence *within* a guideline range that the judge thought he was required to apply does not necessarily mean that the same sentence would have been imposed had the judge understood the Guidelines as a whole to be advisory. The applicable guideline range provides the frame of reference against which the judge

chooses an appropriate sentence. In this case, for example, Judge Block might have thought that once the Commission specified the range it deemed appropriate for offense conduct like Lake's, the details of Lake's offense conduct were sufficiently serious to warrant punishment somewhat high in that range, but he might also have thought that a somewhat lower sentence would have been appropriate if he was selecting a sentence without regard to a Commission-prescribed range. Second, although even before *Booker,* a sentencing judge was obliged to consider all the factors set forth in 18 U.S.C. § 3553(a), the required use of one of those factors—the Guidelines, *see id.* § 3553(a)(4)—rendered of "uncertain import" the significance of the other factors. *See Crosby,* 397 F.3d at 111. Now, without the mandatory duty to apply the Guidelines, consideration of the other section 3553(a) factors "acquires renewed significance," *Crosby,* 397 F.3d at 111, and might result in a different sentence. Third, absent the strictures of the Guidelines, counsel would have had the opportunity to urge consideration of circumstances that were prohibited as grounds for a departure. *See* U.S.S.G. § 5K2.0(d).

In the pending case, we cannot say that it is likely that Judge Block would have imposed a different sentence under the post-*Booker* regime, but the Government has not shown that the possibility is so remote as to render the sentencing error harmless.

### Conclusion

Accordingly, the case is remanded with directions to resentence the Appellant in

issue is always the effect of the error on the

proceeding that occurred, not on any new

conformity with *Booker* and *Fagans*.[4]

proceeding that might be ordered.

4. We have considered the Appellant's challenges to the Guidelines calculation and conclude that they are without merit. The challenges to the adjusted offense level for the offense conduct of attempting to rob George and Patricia Pessoa are irrelevant because even if that offense conduct had been counted as only half a unit for purposes of the grouping calculation, as urged by the Appellant, the resulting total number of units, 4, would still have required a 4–level increase in the adjusted offense level. *See* U.S.S.G. § 3D1.4 (3½–5 units require addition of 4 offense levels).