**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

PATRICK HOWARD GEAMES, also
known as Pat Geames, also known as
Patrick H. Geames, also known as Pat
James,

      Defendant - Appellant.

No. 04-4266

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:03-CR-378-01-DAK)**

---

Richard P. Mauro, Salt Lake City, Utah, for Defendant-Appellant.

Elizabethanne C. Stevens, Assistant United States Attorney (Paul M. Warner,
United States Attorney, with her on the brief), District of Utah, Salt Lake City,
Utah, for Plaintiff-Appellee.

---

Before **McCONNELL**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

After a jury trial, Defendant was convicted of possession with intent to distribute five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and of simple possession of cocaine in violation of 21 U.S.C. § 844(a). Defendant was sentenced to serve a term of one-hundred-twenty-months' imprisonment.[1]

An investigation began when officers from the Sandy City Police Department received information that Defendant and his son were involved with narcotics. Subsequent collection and analysis of the garbage (known as "trash covers") outside Defendant's home were conducted on March 7 and March 21, 2003. Both trash samples revealed the presence of methamphetamine.

On March 28, 2003, after finding methamphetamine at Defendant's home, Sandy City police officers executed a controlled buy of methamphetamine with Defendant's son. The police relied on a confidential informant who posed as the buyer of methamphetamine. This confidential informant had previously agreed to cooperate with the Sandy City Police Department after methamphetamine was found in an unrelated police raid of his home on March 5, 2003. In return for not filing charges concerning the methamphetamine, the confidential informant promised to assist the police. Rec., Vol. VIII, at 235-37.

---

[1]Defendant had admitted to possession of the drugs, and the only issue for the jury to decide was whether he intended to distribute them. Rec., Vol. IX, at 569.

Sandy City police officers operated surveillance, from several locales, to monitor the controlled buy. The surveillance revealed the following: First, the confidential informant met Defendant's son at a 7-Eleven store. The two quickly departed for Defendant's son's trailer home where the confidential informant gave $100 to Defendant's son. Next, Defendant's son drove to Defendant's home where he entered and remained for fifteen minutes. Directly following this visit, Defendant's son returned to his trailer home to meet the confidential informant. The confidential informant then entered Defendant's son's trailer home and, after several minutes, exited with a small bag of methamphetamine which he subsequently turned over to the officers conducting the surveillance.

Warrants were issued on April 2, 2003, to search the homes of both Defendant and his son. At Defendant's home, officers found 16.1 grams of pure methamphetamine, 26.3 grams of cocaine, a digital scale, small clear plastic baggies, various pipes, lighters, and syringes. Defendant stated that all of the drugs and paraphernalia in the house were for his personal use. Rec., Vol. VIII, at 298.

On January 14, 2004, the confidential informant was placed in the Adult Detention Center on traffic warrant violations. In exchange for agreeing to testify at Defendant's trial, the informant was released from incarceration that evening. Rec., Vol. VIII, at 237-38. At Defendant's trial (February 25-27, 2004), the

confidential informant testified that Defendant was a distributor of methamphetamine. Rec., Vol. VIII, at 239.

In June of 2004, nearly four months after Defendant's trial, various charges were filed by the Salt Lake County Attorney's Office against the confidential informant for other crimes which allegedly occurred on January 13, 2004. These charges were dismissed on September 13, 2004.

Defendant now appeals his conviction because (1) the government failed to disclose material exculpatory evidence for purposes of impeaching the confidential informant witness, (2) the court improperly limited the cross-examination of the confidential informant witness, and (3) the trial court erred in sentencing Defendant by applying the United States Sentencing Guidelines in a mandatory fashion.

We review *de novo* the denial of a motion for a new trial based on a claim that the prosecution failed to disclose material exculpatory evidence, in violation of the standard set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). *United States v. Hughes*, 33 F.3d 1248, 1251 (10th Cir. 1994).

Defendant maintains that the trial court erred in denying his request to set aside the verdict on the ground that the government withheld material exculpatory evidence. Specifically, Defendant states that the prosecution did not properly disclose evidence of additional criminal acts committed by the confidential

informant who testified against Defendant at trial. Defendant argues that the disclosure of these additional charges would have significantly assisted him in impeaching the credibility of the confidential informant and exposing the confidential informant's motive to cooperate with the government.

In a criminal case, the prosecution has a duty to disclose exculpatory evidence: evidence is exculpatory under *Brady* if it is either generally favorable to the accused's defense or impeachment evidence. *Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 825-26 (10th Cir. 1995). The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ." *Brady*, 373 U.S. at 87. With the holding of *Giglio v. United States*, the Supreme Court further delineated the disclosure requirements explaining that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).

In order to establish a *Brady* violation, the defendant has the burden of demonstrating: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Banks v. Reynolds*, 54 F.3d 1508, 1516 (10th Cir. 1995) (citation omitted); *see*

*also Smith*, 50 F.3d at 825; *United States v. Hughes*, 33 F.3d 1248, 1251 (10th Cir. 1994).

As to whether the prosecution suppressed evidence, Defendant maintains that the government withheld evidence of the confidential informant's commission of various criminal acts. While the record plainly supports that the confidential informant testified to having committed certain felonies, Defendant was denied the opportunity to question the confidential informant about other acts allegedly committed on or around January 13, 2004. Rec., Vol. VIII, at 259-66. The circumstances of these additional acts are vague, but what is clear is that the confidential informant was not charged with these felonies and misdemeanors until June 11, 2004, more than three months after Defendant's February trial. Rec., Vol. I, Add. D, 3d Dist. Docket Sheet at 2. These charges were later dropped in September of 2004. There is nothing in the record which suggests that, at the time of trial, any federal officer or any member of the Sandy City Police Department involved in the case knew of the confidential informant's alleged pending state charges. Nor has Defendant met his burden by directing this court to any record evidence supporting his proposition that the government suppressed information. Aple. Br., at 34-38. Thus, we do not impute knowledge by the prosecution of these January acts during or before the February 2004 trial, given that no charges were filed until June 2004, months after the trial's

conclusion. We therefore determine that the government did not suppress evidence of these felonies and misdemeanors.[2]

We refrain from addressing the second and third prongs of Defendant's *Brady* claim (whether the evidence was favorable or material) as we have concluded that the government did not withhold evidence. *See United States v. Lopez*, 372 F.3d 1207, 1211 (10th Cir. 2004) (stating that it was not clear error for the trial court, after finding no suppression of evidence by the government, to dispose of defendant's *Brady* claim).

Defendant also argues that his Sixth Amendment right to confrontation was violated when the district court limited his cross-examination of the confidential informant. We review *de novo* whether cross-examination restrictions violate a defendant's Sixth Amendment right to confrontation. *United States v. Toles*, 297 F.3d 959, 967 (10th Cir. 2002) (citing *United States v. McGuire*, 200 F.3d 668, 677 (10th Cir. 1999)). It is crucial that a defendant be afforded the opportunity to confront and cross-examine his opponent witnesses, but it does not follow that courts must allow any cross-examination "that is effective in whatever way, and

---

[2]We note that in *Brady* claims "constructive knowledge" may be attributed to the government in limited circumstances. *See Smith*, 50 F.3d at 824-25 (stating that knowledge by police or investigators may potentially be imputed to the prosecution). However, we do not hasten to impose such constructive knowledge on the government. Indeed, in cases such as this, where no record evidence supports any awareness by the local police or federal officers of the alleged suppressed evidence, we refrain from conjuring up its existence.

to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S.

673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*)).

Defendant claims that the district court erred in limiting the scope of his cross-examination because he was not able to adequately reveal the confidential informant's bias. However, while exposing a witness' motivation is important to a defendant's right of cross-examination, the trial judge may seek to place reasonable boundaries on a bias inquiry. *Van Arsdall*, 475 U.S. at 678-79. Here, the trial court denied Defendant's motion to question the confidential informant on the following issues: (1) an unrelated pending state felony charge; (2) several thousand dollars in unpaid child support; and (3) previous work as an informant for the Utah Department of Motor Vehicles.[3] The court limited cross-examination to the confidential informant's prior convictions and information relating to the agreement between the confidential informant and his cooperation with the Sandy City Police Department.

When considering a defendant's challenge to limitations on cross-examination, we "determine whether the jury had sufficient information to make a

---

[3] Plaintiff's Exhibit 27, which was admitted into evidence during trial, listed "Motor Vehicle" as an agency with whom the confidential informant had worked. In addition, Defendant's counsel argued in closing that the confidential informant had worked for other government agencies. Rec., Vol. IX, at 562.

discriminating appraisal of the witness' motives and bias." *United States v. Bindley*, 157 F.3d 1235, 1240 (10th Cir. 1998) (citing *United States v. Gault*, 141 F.3d 1399, 1403 (10th Cir. 1998)). "A defendant's Confrontation Clause rights are violated when he is prohibited from engaging in otherwise appropriate cross-examination designed to elicit the witness' bias and a reasonable jury might have received a significantly different impression of the witness' credibility." *Toles*, 297 F.3d at 967 (citing *Van Arsdall*, 475 U.S. at 680). Here, the jury learned that the confidential informant was a two-time convicted felon, a regular user of methamphetamine who would likely have failed a drug test on the day of trial because he uses methamphetamine "all the time" (Rec., Vol. VIII, at 253-54), and that he had a conviction for domestic assault, among a host of other unsavory acts. In addition, the record is clear that the jury learned not only about the prior bad acts of the confidential informant but also about his motivation to cooperate with the government. The confidential informant testified that, after raiding his home, the Sandy City Police Department did not file charges against him for possession of methamphetamine in exchange for his cooperation. At trial, the following exchange occurred between the prosecutor and the confidential informant regarding his cooperation with the Sandy City Police Department:

> Q. Okay. What, if anything, did Officer Carver agree to do for you if you would work with him as a confidential informant?
> A. Not file on a particular case.
> Q. They found some drugs on you as a result of the raid?

A. They did.
Q. Do you know how much it was that they found on you?
A. About an eight ball.
Q. Which was an eighth of an ounce?
A. Yes.
Q. What kind of drug was that?
A. Meth.
Q. And they agreed not to file that in court on you if you became a confidential informant for Sandy City; correct?
A. Correct.

Rec., Vol. VIII, at 236.

Defendant's right to cross-examine the confidential informant was not materially hindered. Defendant was able to make use of sufficient evidence to demonstrate possible bias. We do not determine that the jury would have formed a significantly different opinion of the confidential informant had Defendant been able to question him about the additional pending state felony charge, working as an informant for the Department of Motor Vehicles, or owing child support. We hold that his Sixth Amendment right to confrontation was not violated by the district court's limitation of the cross-examination.

Defendant also argues that the district court erred when it applied the United States Sentencing Guidelines Manual ("Guidelines") in a mandatory fashion at sentencing. This, he argues, violated his constitutional rights as recently articulated by the Supreme Court in *United States v. Booker*, __ U.S. __, 125 S. Ct. 738 (2005). Because Defendant made a *Blakely* objection at sentencing, Defendant preserved his *Booker* argument for this appeal. *See United*

*States v. Labastida-Segura*, 396 F.3d 1140, 1142-43 (10th Cir. 2005) (noting that a *Blakely* objection is sufficient to preserve non-constitutional *Booker* error). Non-constitutional *Booker* errors which have been preserved for appeal are reviewed for harmless error. *Id.* Here, we agree with the parties that the error was not harmless. Defendant was sentenced at the low end of the sentencing guideline range, and the district court gave no indication of what the sentence would have been if the Guidelines had not been applied in a mandatory fashion. We therefore refrain from being placed in the "zone of speculation and conjecture" about what the district court would have done had it applied the Guidelines in an advisory capacity. *Id*. at 1143.

We **AFFIRM** the conviction and **REMAND** the case for resentencing.