NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0888n.06
Filed: November 8, 2005

## No. 04-5797

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE EASTERN** |
| GARION LEWIS, | ) | **DISTRICT OF TENNESSEE** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

**BEFORE: KEITH, BATCHELDER, Circuit Judges, and OBERDORFER[1], District Judge.**

**DAMON J. KEITH, Circuit Judge**. Defendant-Appellant Garion Lewis ("Lewis") was convicted on a guilty plea for violating 18 U.S.C. §§ 2119 (carjacking) and 924(a)(1)(A)(ii) and (b) (use and discharge of a firearm in furtherance of a crime of violence). He appeals his sentence, contending that the district court erred when it sentenced him under the mandatory pre-*Booker* sentencing Guidelines. For the reasons set forth below, we **VACATE** the sentencing order and **REMAND** for resentencing consistent with the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005).

## I.     BACKGROUND

### A.      Statement of the Case

---

[1] The Honorable Louis F. Oberdorfer, United States District Court for the District of Columbia, sitting by designation.

On November 25, 2003, a federal grand jury returned a two-count indictment charging Lewis with violating 18 U.S.C. §§ 2119 (carjacking) and 924(c)(1)(A)(iii) (using and discharging a firearm during and in relation to the carjacking). On January 22, 2004, a plea agreement was entered wherein Lewis pled guilty to both counts of the indictment. In the plea agreement, Lewis agreed that he would be sentenced according to the United States Sentencing Guidelines ("U.S.S.G."or "Guidelines") and that the term of his imprisonment for violating § 924(c) was a mandatory minimum of 10 consecutive years.

The Presentence Report ("PSR") was submitted on May 28, 2004. The PSR, using the facts from Lewis' guilty plea, determined his sentence under U.S.S.G. §§ 2B3.1 (carjacking) and 2K2.4 (using a firearm). Section 2B3.1 resulted in a base level offense of 20. Lewis received enhancements under § 2B3.1(b)(4)(A) (four levels) for discharging a firearm during the offense; § 2B3.1(b)(5) (two levels) for carjacking in furtherance of the offense; and § 2B3.1(b)(7)(B) (one level) for stealing the victim's car that cost more than $10,000 but less than $50,000. This raised Lewis' adjusted offense level to 27.

Lewis received a reduction of three levels for acceptance of responsibility, which resulted in a total offense level of 24. Pursuant to U.S.S.G. § 2K2.4, Lewis' Guideline for violating § 924(c) was a statutory minimum of 10 years. The resulting Guideline range for count one was 51 to 63 months. With the addition of 120 months for count two, Lewis' total effective Guideline range was 171 to 183 months.

On June 4, 2004, judgment was entered finding Lewis guilty of violating 18 U.S.C. §§ 2119 and 924(c)(1)(A)(iii). At the sentencing hearing, the district court granted the government's motion

to depart downward based upon Lewis' substantial assistance. The court concluded that the sentencing range for Lewis absent a downward departure was the equivalent of an offense level of 34, Criminal History Category I. The court departed downward from that range to an offense level of 32 and a sentencing range of 121 to 151 months. Taking into consideration the eight months Lewis had already served but that the Bureau of Prisons would not credit, the district court sentenced Lewis to a term of 130 months. After the entry of judgment, Lewis filed a timely notice of appeal.

**B.      Facts**

The PSR sets forth the following conduct as underlying the offense. On September 10, 2003, Jason Brannon ("Brannon"), a distribution manager for the *Chattanooga Times/Free Press* newspaper, was working at a newspaper rack. He was approached by three men, including Lewis who was holding a gun. The three men threatened to shoot Brannon and forced him to give them the newspaper rack money as well as his wallet. Brannon told the men that they could get more money from newspaper racks in other locations. The men pointed the gun at Brannon's face and forced him to get into the rear cargo area of his car.

Brannon instructed the men to drive to Parkridge Hospital where he could remove more money from the newspaper racks. When they arrived at the hospital, one of the men, with the gun in his waistband, accompanied Brannon into the hospital. Brannon was forced to remove the money from the racks.

The men discovered Brannon's ATM card and instructed him to withdraw $2,500 from his account. Brannon attempted withdraw $2,500, but was only permitted to withdraw $300. The men

then drove to another ATM and Brannon withdrew another $300. After each ATM withdrawal, Brannon was forced back into the rear cargo area of the vehicle.

At the third ATM, as Brannon was withdrawing money, a customer drove up and distracted the men. Brannon ran into the nearby Krispy Kreme Doughnut shop. As Brannon ran into the shop, Lewis fired two gun shots in Brannon's direction. One of the bullets hit the Krispy Kreme building. The men drove away in Brannon's vehicle. Several days later, Lewis and the other men were arrested in Atlanta, Georgia.

## II.   ANALYSIS

Lewis was convicted on a guilty plea for violating 18 U.S.C. §§ 2119 (carjacking) and 924(c)(1)(A)(ii), (2)(a) and (b) (use and discharge of a firearm in furtherance of a crime of violence). Lewis argues on appeal that his sentence should be vacated under *Booker*, 125 S.Ct. 738, because the district court sentenced him under the mandatory pre-*Booker* guidelines.

The *Booker* decision made two major changes to the Guidelines. First, *Booker* requires this court to determine whether the district court violated the Sixth Amendment when it imposed an enhanced sentence based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant. *Id*. at 756. In this case, there was no Sixth Amendment violation. Lewis admitted in the plea agreement that he discharged a firearm in furtherance of a crime of violence, with knowledge that this offense included a mandatory minimum sentence of ten consecutive years. The district court did not violate the Sixth Amendment when it enhanced Lewis' sentence beyond the base level offense Guideline range,

relying on the facts Lewis admitted in his plea agreement. *Id*. at 749 (citing *Blakely v. Washington*, 542 U.S. 296 (2004)).

Second, *Booker* excised and severed two provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3553(b)(1) and 3742(e) in order to remedy any potential Sixth Amendment violations created by mandatory sentencing enhancements under the Guidelines.[2] *Id*. at 764. The Guidelines are now advisory without these provisions. *Id*. at 757. Thus, while a district court must still give some consideration to the appropriate Guideline range when making a sentencing determination, the district courts are no longer bound by the applicable Guidelines. Thus, it is erroneous for a district court to sentence a defendant based on the belief that the Guidelines are mandatory, even if no Sixth Amendment violation results. *Id*. at 769.

This appeal presents a non-constitutional *Booker* error issue. Lewis failed to raise a *Booker* challenge to his sentence in district court. Where a challenge to the district court's sentencing has not been raised below, this court reviews the district court's decision for plain error. *United States v. Oliver*, 397 F.3d 369, 375 (6th Cir. 2005); *see also*, *United States v. Barnett*, 398 F.3d 516, 525 (citing *Booker*, 125 S.Ct. at 769) (noting that whether a new sentencing hearing is required depends on "ordinary prudential doctrines" such as "whether the issue was raised below and whether it fails the plain error test."); Fed.R.Crim.P. 52(b).

Under the plain error test, before an appellate court can correct an error not raised at trial, there must be (1) an error; (2) that was plain (i.e., clear and obvious); (3) that affected substantial

---

[2]Section 3553(b)(1) required sentencing courts to impose a sentence within the applicable Guideline range (in the absence of circumstance that justify a departure) and § 3742 sets forth the standard of review on appeal for sentencing determinations. *Booker*, 128 S.Ct. at 764.

rights. *United States v. Hamm*, 400 F.3d 336, 339 (6th Cir. 2005) (quotations omitted). If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if "the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

The first two prongs under the plain error test are satisfied. There was an error and the error was plain. The district court erroneously sentenced Lewis under the mandatory pre-*Booker* Guidelines. The district court was required to use the mandatory Guidelines. The district court's error was "clear" and "obvious" in that it treated the Guidelines as mandatory. *See Oliver*, 397 F.3d at 379 (stating that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal [] it is enough that an error be 'plain' at the time of appellate consideration." (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)).

In this case, the main issue is whether the error affected Lewis' substantial rights. This means that the error must have been prejudicial. A prejudicial error must affect the outcome of the proceedings. *United States v. Milan*, 398 F.3d 445 (6th Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)).

In *Barnett*, this court held that when a district court sentences a defendant assuming that the Guidelines are mandatory, there is a presumption that defendant's substantial rights were affected. 398 F.3d at 529, *reh'g en banc denied*, 400 F.3d 481 (6th Cir. 2005), *cert. denied*, – S.Ct. –, 2005 WL 1420271 (Sept. 20, 2005). The court applied this standard to the non-constitutional *Booker* error finding that the inherent nature of the error makes it exceptionally difficult for the defendant to demonstrate that the outcome of the lower court would have been different had the error not

occurred. *Id*. at 526-27; *see also Hamm*, 400 F.3d at 340 (stating that even if the district court might have opted not to depart from the recommendations of the Sentencing Guidelines, the fact that it did not have the opportunity to do so affected the defendant's substantial rights). *But see United States v. Shelton*, 400 F.3d 1325 (11th Cir. 2005) (rejecting the *Barnett* presumed prejudice standard); *United States v. Gonzales-Huerta*, 403 F.3d 727 (10th Cir. 2005) (same).

Further, this court in *United States v. Oliver*, the first Sixth Circuit case interpreting *Booker*, found that "even if we conclude that the evidence is 'overwhelming and essentially uncontroverted' we cannot know the length of imprisonment that the district court judge would have imposed pursuant to this evidence following *Booker*. . . .   We would be usurping the discretionary power granted to the district court by *Booker* if we were to assume that the district court would have given Oliver the same sentence post-*Booker*."  397 F.3d at 381 n.3.

The Second Circuit case, *United States v. Lake*, is also instructive on this point.  419 F.3d 111, 113 (2nd Cir. 2005).  In *Lake*, the court stated that "[a]lthough some sentences imposed under the pre-*Booker* regime would not have been different had the sentences been imposed under the post-*Booker* regime, it will usually not be easy to divine with certainty that the sentencing judge would have imposed the same sentence. *Id.* at 113.

"The presumption of prejudice can only be rebutted in *rare* cases where the trial record contains clear and specific evidence that the district court would not have, in any event, sentenced

the defendant to a lower sentence under an advisory Guidelines regime." *Webb*, 403 F.3d at 382

(emphasis added).[3]

The government argues that the record contains clear and specific evidence that the district

court would not change his sentence on remand. The government relies on a recent case from this

court, *United States v. Webb*, 403 F.3d 373. In *Webb*, this court found that the district court plainly

erred when it sentenced the defendant under the pre-*Booker* mandatory Guidelines. The court,

nevertheless, found that the record rebutted the presumption of prejudice and demonstrated that the

district court would not have sentenced the defendant to a lower sentence under an advisory

Guideline regime. The court reasoned that this presumption was rebutted where the district court

(1) sentenced the defendant to the maximum sentence possible within the guidelines' range; (2)

referred to the defendant as a "menace," and (3) actually considered an upward departure from the

appropriate guidelines range. *Id*. at 382. The court concluded that "this [was] an *exceptional* case

where the record contained clear and specific evidence that the district court would not have

sentenced Webb to a lower sentence under an advisory Guidelines regime. *Id*. (emphasis added).

This case, unlike *Webb*, is not a rare or exceptional case where there is clear and specific

evidence that the district court would not change its sentence under an advisory Guidelines regime.

The government relies on the district court's statements reprimanding Lewis for his conduct and

---

[3] In *United States v. Milan*, 398 F.3d 445 (6th Cir. 2005), this court noted that in comparison with other circuits, this circuit has adopted a moderate approach to remanding Sixth amendment cases involving constitutional and non-constitutional *Booker* errors. *See, e.g.*, *United States v. Rodriguez*, 398 F.3d 1291 (11th Cir. 2005) (finding that most Sixth amendment errors will not result in remands because the appealing defendant will not be able to demonstrate a reasonable probability that he was prejudiced). *But see, United States v. Crosby*, 397 F.3d 103 (2nd Cir. 2005) (finding that automatic remand is warranted in all *Booker* cases).

questioning why he committed the crime. Specifically, the government highlights the district

judge's statements that:

> I'm at a loss to understand why someone would take the risk that you took to point
> a gun in the middle of a city, aim the gun at a business facility where you knew there
> were people, and fire the gun. I could understand your [sic] trying to shoot Mr.
> Brannon. That's not good, and it's not acceptable; that is understandable. What is
> not understandable is firing a weapon into a business where there is such a
> substantial risk of harm to people.
> . . .
>
> If the Court had major concerns that when you got out of jail you would again be
> exercising such poor judgment where you were subjecting innocent citizens to a risk
> of harm, the Court would try to incarcerate you for as long as the Court could. But
> since you do have a clean record and the government has filed a motion on your
> behalf which the Court has granted, the Court is going to give you the benefit of the
> doubt and give you a sentence which is going to result in your being back out on the
> streets in about ten years. You'll be about 28-29, 29 years old [sic], if you get good
> time. Compared to what other people get, that is not a long time.
> . . .
>
> Giving you the credit for the cooperation that you have rendered to the government,
> the Court is of the view that a sentence of 138 months would be appropriate.

The district court's statements do not show that this is the rare or exceptional case that presents clear

and specific evidence that it would not have ruled differently under an advisory sentencing regime.

In addition, even though the district court commented on the severity of Lewis' crime, it

chose to depart downward. *Cf. Webb*, 403 F.3d 373 (finding an upward departure, in addition to

other factors, as clear and specific evidence that the district court would not reduce its sentence

under an advisory Guidelines scheme). The district court also indicated that if it had major concerns

that Lewis would commit another crime when he is released from jail, it would incarcerate him for

as long as it could. This is evidence that the district court did not feel that Lewis should receive the

maximum sentence. Furthermore, Lewis was not sentenced at the top of the Guideline range.

Unlike *Webb*, the court did not sentence Lewis at the top of the Guideline range when his range was 121 to 151 months and he was sentenced to 138 months.

Because the district court might have opted to depart from the recommendations of the Sentencing Guidelines, the fact that it did not have the opportunity to do so affected the defendant's substantial rights. *Hamm*, 400 F.3d at 340. The district court committed a reversible error that affected Lewis' substantial rights when it sentenced him pursuant to the mandatory pre-*Booker* sentencing guidelines.

Finally, it is within this court's discretion to decide whether the error "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Hamm*, 400 F.3d at 340. This court believes that "[w]e would be usurping the discretionary power granted to the district courts by *Booker* if we were to assume that the district court would have given [the defendant] the same sentence post-*Booker*." *Id.* (citing *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005)).

III.    CONCLUSION

For the reasons stated above,  we **VACATE** Lewis' sentence and **REMAND** the case to the district court for re-sentencing consistent with this opinion.