# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

JESUS ADRIAN BENG-SALAZAR,
          *Defendant-Appellant.*

No. 04-50518

D.C. No.
CR-04-00482-NAJ

OPINION

Appeal from the United States District Court
for the Southern District of California
Napoleon A. Jones, District Judge, Presiding

Argued and Submitted
October 21, 2005—Pasadena, California

Filed July 6, 2006

Before: Cynthia Holcomb Hall, Diarmuid F. O'Scannlain,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

**COUNSEL**

Ellis M. Johnston, III, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Christopher P. Tenorio, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

---

## OPINION

PAEZ, Circuit Judge:

Jesus Adrian Beng-Salazar ("Beng") appeals his conviction and sentence for illegal reentry into the United States in violation of 8 U.S.C. § 1326. In a separate memorandum, we affirm Beng's conviction. In this opinion, we consider Beng's arguments that his sentence violated the Sixth Amendment and ran afoul of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Beng was sentenced under the now-defunct mandatory Guidelines regime. We hold that Beng's timely Sixth Amendment objections, based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), were sufficient to preserve his *Booker* challenge to the court's imposition of his sentence using the erstwhile mandatory Guidelines. We vacate Beng's sentence and remand for resentencing under the now-advisory Guidelines system.

## I.   Background

In July 2004, a jury found Beng guilty of illegal reentry. At the time of his sentencing in October 2004, the Supreme Court had decided *Apprendi* and *Blakely*, but not *Booker*. In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely*, the Court relied on *Apprendi* to hold that Washington State's sentencing procedure violated the Sixth Amendment because it permitted a defendant to be sentenced above a standard sentencing range based on facts not found by

a jury beyond a reasonable doubt. 542 U.S. at 301-05. It was not until January 2005, however, that the Court in *Booker* held that "the Sixth Amendment as construed in *Blakely* does apply to the [federal] Sentencing Guidelines," 543 U.S. at 226-27, and crafted the remedy of converting the mandatory federal Sentencing Guidelines into advisory guidelines, *id.* at 245.

Beng's Presentence Report ("PSR") recommended an increase in Beng's base offense level by sixteen levels, based on the fact that he was previously deported following a conviction for a crime of violence. *See* U.S.S.G. § 2L1.2(b)(1) (A)(ii). The PSR also recommended that Beng be placed in Criminal History Category III, based on a calculation of five criminal history points. Relying on *Apprendi* and *Blakely*, Beng argued to the district court that these recommendations would violate his Sixth Amendment right to have a jury determine any facts that increased the maximum sentence he could receive. Beng made three arguments.

First, Beng asserted that *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which excepts prior convictions from *Apprendi*'s general rule, effectively has been overruled. Second, Beng attempted to distinguish *Almendarez-Torres* from his case, arguing that it applies only to cases where a defendant admits the fact of his prior conviction. Third, Beng objected on Sixth Amendment grounds to the district court's consideration of his prior convictions in calculating his Criminal History Category.

The district court rejected Beng's arguments. Relying on its finding that Beng had been deported subsequent to a conviction for a crime of violence, the court increased Beng's offense level by sixteen levels. The court also found that Beng was in Criminal History Category III. With an adjusted offense level of twenty-four, the court calculated Beng's Guideline range to be sixty-three to seventy-eight months. The district judge sentenced Beng to seventy months in prison

followed by three years of supervised release. Beng timely appealed.

## II.   Discussion

### A.   Challenges to Almendarez-Torres *and 8 U.S.C.* § 1326(b)

**[1]** We first dispose of two of Beng's sentencing challenges, which are foreclosed by our case law. Under § 1326(b)(2), the maximum penalty for illegal reentry is increased from two years to twenty years in prison if the defendant was previously removed subsequent to a conviction for an aggravated felony.[1] In *Almendarez-Torres*, the Supreme Court held that "subsection [(b) of 8 U.S.C. § 1326] is a penalty provision, which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime. Consequently, neither the statute nor the Constitution requires the Government to charge the factor that it mentions, an earlier conviction, in the indictment." 523 U.S. at 226-27.

On appeal, Beng abandons his claim that *Almendarez-Torres* implicitly has been overruled by subsequent Supreme Court precedent, but renews his argument that recent decisions of the Supreme Court limit *Almendarez-Torres*'s holding to cases where a defendant has admitted his prior convictions during a guilty plea. He cites *Shepard v. United States*, 544 U.S. 13 (2005), and *Dretke v. Haley*, 541 U.S. 386 (2004), in support. Because Beng did not admit his prior convictions, and because they were neither charged in his indictment nor proved to a jury, he asserts that they could not be used to enhance his offense level or calculate his Criminal History Category.

---

[1]Subsections (b)(1), (3), and (4) increase the maximum penalty to ten years in prison if other factors not at issue in Beng's case apply.

Beng makes a separate but related argument that 8 U.S.C. § 1326(b) is unconstitutional because it permits a judge to increase a defendant's statutory maximum sentence for a § 1326 violation from two years to ten or twenty years, in violation of *Apprendi*. In adopting the PSR's recommendations, the court effectively increased Beng's maximum potential sentence to twenty years, based on § 1326(b)(2).

**[2]** Our decision in *United States v. Rodriguez-Lara*, 421 F.3d 932, 949-50 (9th Cir. 2005), affirming the continued validity of *Almendarez-Torres* and rejecting a challenge to § 1326(b), forecloses these arguments. *See also United States v. Lopez-Torres*, 443 F.3d 1182, 1185 (9th Cir. 2006) ("We have repeatedly rejected [the] argument [that subsequent cases undermine the holding in *Almendarez-Torres*], and do so again here."); *United States v. Quintana-Quintana*, 383 F.3d 1052 (9th Cir. 2004) (reaffirming the constitutionality of 8 U.S.C. § 1326(b) in the wake of *Apprendi* and *Blakely*), *cert. denied*, 543 U.S. 1130 (2005).

## B.    *Preservation of Error*

Although Beng's Sixth Amendment arguments fail, we hold that his invocation of them in district court was sufficient to preserve a challenge to the nonconstitutional error identified in *Booker*, i.e., the fact that Beng was sentenced under the mandatory Guidelines system.

### 1.

*Apprendi* and its progeny give rise to two interrelated but distinct claims of sentencing error. First, a defendant's Sixth Amendment right to a jury trial is infringed if his maximum sentence is increased based on facts not proved to a jury beyond a reasonable doubt. A defendant who makes this claim asserts an error of constitutional magnitude. Second, the unique remedy the Supreme Court fashioned in *Booker* gives rise to a different kind of sentencing error. We have held that

application of the mandatory Guidelines, absent a Sixth Amendment violation, constitutes nonconstitutional *Booker* error. *United States v. Ameline*, 409 F.3d 1073, 1084 n.8 (9th Cir. 2005) (en banc) ("In a case where the district court did not treat the sentencing guidelines as advisory but the defendant's sentence was not enhanced by extra-verdict findings . . . a different, nonconstitutional error occurs."). In addition to his Sixth Amendment claims, Beng argues on appeal that he is entitled to resentencing because the district court applied the now-invalidated mandatory Sentencing Guidelines to his case.

2.

A defendant challenging his sentence under *Booker* might be entitled to relief because either (1) his constitutional right to have a jury determine facts that enhance his maximum sentence was abridged, or (2) he was sentenced under the mandatory Guidelines regime. Beng is not entitled to relief on the first ground. Beng's argument that he is entitled to resentencing on the second ground requires us to address an issue of first impression in this circuit.

Defendants making either of the above claims for relief can preserve their arguments by raising them in the district court. Typically, we review preserved errors for harmlessness. *See* Fed R. Crim. P. 52(a); *see also United States v. Seschillie*, 310 F.3d 1208, 1214 (9th Cir. 2002) (stating that when a preserved error is not of constitutional magnitude, we "reverse if there is a fair assurance of harmlessness, or stated otherwise, unless it is more probable than not that the error did not materially affect the verdict" (internal quotation marks omitted)); *United States v. Walters*, 309 F.3d 589, 593 (9th Cir. 2002) ("The test for determining whether a [preserved] constitutional error is harmless is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (internal quotation marks omitted)). We review unpreserved errors for plain error. *See* Fed. R. Crim.

P. 52(b); *see also United States v. Recio*, 371 F.3d 1093, 1100 (9th Cir. 2004) (stating that we reverse when an unpreserved error is plain, affects substantial rights, and "seriously affects the fairness, integrity or public reputation of judicial proceedings" (alteration and internal quotation marks omitted)).

In *Ameline*, however, we set forth a unique procedure to apply in cases of unpreserved, constitutional Sixth Amendment *Apprendi* error. The unpreserved nature of the error in *Ameline* called for plain error analysis, and we adopted an anomalous remand procedure to address the substantial rights prong of the plain error test. *Ameline*, 409 F.3d at 1078-85. Rather than decide for ourselves whether the error affected substantial rights, we "remand to the district court to answer the question whether the sentence would have been different had the court known that the Guidelines were advisory." *Id.* at 1079. In *United States v. Moreno-Hernandez*, 419 F.3d 906, 915-16 (9th Cir.), *cert. denied*, 126 S. Ct. 636 (2005), we extended *Ameline*'s approach to cases of unpreserved, nonconstitutional *Booker* error.

*Ameline* and *Moreno-Hernandez* left open the question of what procedure to apply in cases of *preserved* constitutional (i.e., Sixth Amendment) and nonconstitutional (i.e., mandatory application of the Guidelines or *Booker*) error. In *United States v. Kortgaard*, 425 F.3d 602 (9th Cir. 2005), we answered this question for cases of preserved, constitutional error. In *Kortgaard*, we did not order an *Ameline* remand, but instead vacated the sentence and remanded for resentencing under the advisory Guidelines system. *Id.* at 611. In *United States v. Hagege*, 437 F.3d 943, 959 (9th Cir. 2006), we remedied the government's preserved, nonconstitutional *Booker* error with the same vacate and remand procedure.

**[3]** Thus, we order an *Ameline* remand in cases of unpreserved constitutional and nonconstitutional error. We vacate and remand in cases of preserved constitutional and nonconstitutional error.

If Beng did not preserve his challenge to the district court's use of the mandatory Guidelines at his sentencing, his case is controlled by *Moreno-Hernandez* and we will grant a limited remand as outlined in *Ameline*. If, however, Beng preserved his challenge, we must vacate his sentence and remand for resentencing, provided the error was not harmless. Determining whether Beng's *Booker* challenge is preserved is thus a prerequisite to deciding the proper disposition of his appeal.

3.

**[4]** As it turns out, resolving whether Beng preserved his challenge to the court's mandatory use of the Sentencing Guidelines leads us to address an issue of first impression in our circuit. Beng repeatedly raised his Sixth Amendment claims in his presentencing briefs and at his sentencing hearing, citing *Apprendi* and *Blakely*. But at no point prior to his briefing in this court did he explicitly argue that the federal Sentencing Guidelines were unconstitutional because of their mandatory nature, or that mandatory application of the Guidelines to his case was error. Indeed, to have done so would have required foresight of Cassandran proportion. No one predicted that the Supreme Court would remedy the Guidelines' constitutional infirmity by rendering them advisory. Our own court did not anticipate this result. *See United States v. Ameline*, 376 F.3d 967 (9th Cir. 2004), *amended and superceded on reh'g by* 400 F.3d 646 (9th Cir. 2005), *superceded on reh'g en banc by* 409 F.3d 1073. It is unlikely that any defendant would have objected to a judge's use of *mandatory* Sentencing Guidelines, prior to the Supreme Court's January 2005 decision in *Booker*. Were we to require a defendant to have made such an objection in order to preserve his nonconstitutional *Booker* claim, we doubt there would be any cases where a defendant preserved a nonconstitutional *Booker* error for us to address.

**[5]** We believe that, in these circumstances, the better approach is to take a generous view of which objections pre-

serve a challenge to a district court's use of mandatory Sentencing Guidelines. We hold that Beng's Sixth Amendment objections, made at the time of sentencing and raised under and citing to *Apprendi* and *Blakely*, are sufficient to preserve his *Booker* claim.

To the extent they have spoken on this issue, our sister circuits uniformly have adopted similar standards for determining when a defendant has preserved his challenge to mandatory application of the Guidelines to his case. The First, Second, Fourth, Fifth, Seventh, Eighth, Tenth, and Eleventh Circuits each have recognized that a defendant's argument that *Apprendi* or *Blakely* undermined the federal Guidelines, or that he was entitled to have a jury determine the sentencing factors in his case, preserved his claim of nonconstitutional *Booker* error. *See United States v. Rodriguez-Mesa*, 443 F.3d 397, 404 (5th Cir. 2006) (per curiam) ("Regardless of whether Rodriguez-Mesa's error is characterized as a *Booker* or *Fanfan* error, he preserved that error by raising a *Blakely* objection in the district court.");[2] *United States v. Rodriguez*, 433 F.3d 411, 415 (4th Cir. 2006) (holding that defendant "properly preserved his claim of statutory *Booker* error by raising a timely *Blakely* objection at sentencing" and noting that the court's "position on this issue is consistent with the unanimous view of the nine courts of appeals to have considered the question"); *United States v. Geames*, 427 F.3d 1333, 1339 (10th Cir. 2005) ("Because Defendant made a *Blakely* objection at sentencing, Defendant preserved his *Booker* argument for this appeal."); *United States v. Burke*, 425 F.3d 400, 416 (7th Cir. 2005) (holding that defendant preserved his *Booker* argument "by objecting to his sentence on the grounds that it violated *Apprendi*"); *United States v. Lake*, 419 F.3d 111, 112 (2d Cir. 2005) (holding that defendant who "objected, on

---

[2]Not every circuit uses the terms "constitutional" and "nonconstitutional" or "*Booker*" error that we have adopted in this circuit. The Fifth Circuit refers to "*Booker*" and "*Fanfan*" error, respectively. *See United States v. Walters*, 418 F.3d 461, 463 (5th Cir. 2005).

Sixth Amendment grounds, to any enhancement of his sentence based on facts not found by a jury, relying on *Apprendi* . . . and . . . *Blakely*" preserved his nonconstitutional *Booker* error claim); *United States v. Fleck*, 413 F.3d 883, 896 (8th Cir. 2005) (stating that a defendant preserves his nonconstitutional *Booker* error claim by objecting "based on *Apprendi* or *Blakely*, or argu[ing] that the guidelines were unconstitutional"); *United States v. Mathenia*, 409 F.3d 1289, 1290-91 (11th Cir. 2005) (per curiam) (holding that defendant preserved his *Booker* error claim where he argued at sentencing that application of the Guidelines violated the Sixth Amendment, as interpreted in *Blakely*); *United States v. Antonakopoulos*, 399 F.3d 68, 76 (1st Cir. 2005) ("The argument that a *Booker* error occurred is preserved if the defendant below argued *Apprendi* or *Blakely* error or that the Guidelines were unconstitutional.").**³** The Third and District of Columbia Circuits do not appear to have addressed this issue.

The First Circuit explained the rationale behind this approach in *United States v. Martins*, 413 F.3d 139, 152 (1st Cir.), *cert. denied*, 126 S. Ct. 644 (2005): "In light of the unexpected nature of *Booker*'s holding that the sentencing guidelines must be treated as advisory, we have been fairly liberal in determining what sorts of arguments sufficed to preserve claims of *Booker* error in pre-*Booker* cases." We agree with the First Circuit that the unique nature of the remedy in *Booker* could not have been predicted and thus counsels a generous interpretation of objections based on the *Apprendi* line of cases that were made prior to *Booker*.**⁴** In so holding,

---

**³**A panel of the Sixth Circuit came to the same conclusion in an unpublished decision. *United States v. Thomas*, 138 Fed. Appx. 759, 762 (6th Cir. 2005) (unpublished).

**⁴**We also agree with the First Circuit that not all objections to a pre-*Booker* Guideline sentence will preserve a claim of *Booker* error. Rather, "the sort of constitutional challenges sufficient to preserve claims of *Booker* error in pre-*Booker* cases must fall at least arguably within the encincture of the constitutional concerns raised in *Apprendi*, *Blakely*, and

we are mindful of our charitable approach to preservation questions in other contexts. *See, e.g.*, *Valley Outdoor, Inc. v. City of Riverside*, 446 F.3d 948, 954 n.7 (9th Cir. 2006) (noting our liberal interpretation of complaints, pretrial conference orders, objections, and arguments on appeal); *Holley v. Crank*, 400 F.3d 667, 670 (9th Cir. 2005) ("[W]e read opening briefs liberally."); *United States v. Lui*, 941 F.2d 844, 846 (9th Cir. 1991) (holding that, despite defendant's failure to object to admissibility of evidence during trial, the issue was preserved because he had raised it in his motion in limine).

4.

Here, Beng objected to any enhancement of his sentence based on facts that had not been found by a jury beyond a reasonable doubt. In support of his argument, he relied on *Apprendi* and *Blakely*, grounding his objection in the Sixth Amendment right to a jury trial. Beng's objections in district court preserved his nonconstitutional *Booker* error claim.

## C. Proper Remedy

**[6]** It is beyond dispute that the district court, albeit unknowingly at the time, erred in sentencing Beng using the then-mandatory Sentencing Guidelines. Because we conclude that Beng preserved his claim of nonconstitutional *Booker* error, we must decide the appropriate remedy in his case.

In *Kortgaard* and *Hagege*, cases of preserved constitutional and nonconstitutional *Booker* error, respectively, we did not

*Booker*." *Martins*, 413 F.3d at 153; *see also United States v. Epstein*, 426 F.3d 431, 442 (1st Cir. 2005) ("The similarity of the constitutional issues present in *Booker*, *Blakely*, and *Apprendi* justifies the wide latitude afforded defendants for preserving *Booker* errors, but this latitude is limited. For example, an argument that the acceptance of responsibility guideline was unconstitutional does not preserve a *Booker* error." (citation and internal quotation marks omitted)), *cert. denied*, 126 S. Ct. 1596 (2006).

grant limited *Ameline* remands but rather vacated the sentences and remanded for resentencing. We crafted the remedy of an *Ameline* remand in response to an "unusual situation," and out of concern that we not affirm unconstitutional sentences. *Ameline*, 409 F.3d at 1079.[5] *Ameline* was not intended to replace traditional harmless error analysis for cases of preserved error. *See id.* at 1078 n.1 ("A different analysis *will* apply when a defendant preserves his Sixth Amendment claim . . . ." (emphasis added)).

**[7]** Therefore, as does every other circuit that has encountered a case of preserved, nonconstitutional error, we review Beng's *Booker* error for harmlessness. *Accord Rodriguez-Mesa*, 443 F.3d at 404 (Fifth Circuit); *Rodriguez*, 433 F.3d at 416 (Fourth Circuit); *Geames*, 427 F.3d at 1339 (Tenth Circuit); *United States v. Casas*, 425 F.3d 23, 60 (1st Cir. 2005), *cert. denied*, 126 S. Ct. 1670 (2006) (First Circuit); *Burke*, 425 F.3d at 417 (Seventh Circuit); *Lake*, 419 F.3d at 113 (Second Circuit); *United States v. Haidley*, 400 F.3d 642, 644 (8th Cir. 2005) (Eighth Circuit). We will "reverse unless there is a fair assurance of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict." *United States v. Gonzales-Flores*, 418 F.3d 1093, 1099 (9th Cir. 2005) (internal quotation marks omitted).

---

[5]Although we adopted the limited remand approach in *Ameline* and extended its use in *Moreno-Hernandez*, in other cases of *Booker* error we have vacated and remanded for resentencing. *See, e.g.*, *United States v. Sanders*, 421 F.3d 1044, 1052 (9th Cir. 2005) ("[W]hen the original sentencing judge is not available to conduct a limited remand pursuant to *Ameline*, the original sentence should be vacated and the case remanded for a full resentencing hearing."); *cf. United States v. Dare*, 425 F.3d 634, 643 (9th Cir. 2005) (implicitly recognizing that vacating and remanding for resentencing would be appropriate in a case of preserved, nonconstitutional *Booker* error, were it not for a mandatory minimum statute that precluded the possibility of a different sentence on remand). Even in the case of unpreserved, nonconstitutional *Booker* error, where *Moreno-Hernandez* counsels ordering a limited remand, we vacate and remand for resentencing when it is clear that the error affected the outcome of the sentencing hearing. *See United States v. Beaudion*, 416 F.3d 965, 970 (9th Cir. 2005).

The Government bears the burden of demonstrating harmlessness, and should we find ourselves "in equipoise as to the harmlessness of the error, reversal is required." *Id.*

[8] In light of the new advisory Guidelines system, it may be difficult for the government to show that it is more probable than not that a district judge would have imposed the same sentence under the advisory Guidelines. *See Casas*, 425 F.3d at 60-61; *Lake*, 419 F.3d at 113-14; *Mathenia*, 409 F.3d at 1292. We find the Second Circuit's reasoning particularly persuasive. As that court explained in *Lake*,

> Once the Supreme Court fundamentally altered federal sentencing procedures by ruling in *Booker* that the Guidelines were no longer required to be applied, it became difficult for the Government to sustain its burden of proving that a *Booker* error was harmless. Although some sentences imposed under the pre-*Booker* regime would not have been different had the sentences been imposed under the post-*Booker* regime, it will usually not be easy to divine with certainty that the sentencing judge would have imposed the same sentence. We have recognized that a "rare" case may arise where we can confidently say that a sentencing error was harmless, as occurs in circumstances where a statutory mandatory minimum prevents the sentencing judge from giving a lesser sentence after *Booker* than the one imposed pre-*Booker*.

419 F.3d at 113-14 (footnote omitted); *see also United States v. Fuller*, 426 F.3d 556, 561 (2d Cir. 2005) ("[We cannot] say with any confidence what considerations counsel for both sides might have brought to the sentencing judge's attention had they known that they could, as a matter of law, urge the judge to impose a non-Guidelines sentence." (internal quotation marks omitted)).

**[9]** The Government cannot direct us to any evidence in Beng's case to satisfy its burden. *Cf. Rodriguez-Mesa*, 443 F.3d at 405 (holding that the government could not meet its burden to show harmless error when the district court was silent on how it might have sentenced the defendant under an advisory Guidelines system); *Rodriguez*, 433 F.3d at 416 (same); *Geames*, 427 F.3d at 1339 ("We . . . refrain from being placed in the zone of speculation and conjecture about what the district court would have done had it applied the Guidelines in an advisory capacity." (internal quotation marks omitted)). We conclude that the Government has not established that it is more probable than not that the error did not materially affect Beng's sentencing, and we vacate his sentence and remand for resentencing under the advisory Guidelines.[6]

## III.  Conclusion

We reject Beng's arguments regarding the continued validity of *Almendarez-Torres* and 8 U.S.C. § 1326(b).

We follow the lead of every other circuit to consider the issue and hold that a defendant who raised an objection in district court based on the Sixth Amendment holdings of the *Apprendi* line of cases preserved his claim that he is entitled to resentencing under the advisory Guidelines regime. Because Beng's objections pass muster under this test, he is

---

[6]That Beng was sentenced to a mid-range Guideline sentence does not affect our analysis. *See United States v. Glover*, 431 F.3d 744, 750 (11th Cir. 2005) (per curiam) ("The government must do more than rely upon a mid-range sentence to satisfy its burden under the harmless error standard."); *Lake*, 419 F.3d at 114 ("[T]he fact that a judge selects a sentence *within* a guideline range that the judge thought he was required to apply does not necessarily mean that the same sentence would have been imposed had the judge understood the Guidelines as a whole to be advisory."). *But see Glover*, 431 F.3d at 750 (recognizing that the Eighth and Tenth Circuits have held that *Booker* error is harmless when a defendant has been sentenced to the midpoint of a Guideline range).

entitled to full vacatur of his sentence and a remand to the district court for resentencing unless the Government can show that the error was harmless. In light of the district court's understandable silence on how it would have sentenced Beng under an advisory Guidelines system, the Government cannot meet its burden.

We **VACATE** Beng's sentence and **REMAND** his case to the district court for resentencing.