**UNITED STATES of America,**
**Appellee,**

v.

**Wesley BLACKBURN, Defendant–**
**Appellant.**

**Docket No. 05–1875–cr.**

United States Court of Appeals,
Second Circuit.

Argued: Dec. 23, 2005.

Decided: July 26, 2006.

Timothy W. Hoover, Assistant Federal Defender, Federal Public Defender's Office, Western District of New York, Buffalo, NY, for Defendant–Appellant.

James P. Kennedy, Jr., Assistant United States Attorney, Western District of New York, Buffalo, NY, (Kathleen M. Mehltretter, Acting United States Attorney for the Western District of New York, Buffalo, NY, of counsel), for Appellee.

Before MESKILL, SOTOMAYOR, Circuit Judges, and KAPLAN, District Judge [1].

MESKILL, Circuit Judge.

Defendant-appellant Wesley Blackburn challenges the judgment of the United States District Court for the Western District of New York, Skretny, *J.*, sentencing him principally to 37 months imprisonment followed by three years supervised release. Blackburn's sole argument on appeal is that the district court erred in imposing a four-level sentencing enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2K2.1(b)(5). Because Blackburn has completed his prison sentence and we are convinced that a favorable decision on appeal would yield no "effectual relief," *United States v. Quattrone,* 402 F.3d 304, 308 (2d Cir.2005), we conclude that the case is moot and dismiss it for lack of jurisdiction without reaching the merits of Blackburn's claim.

## BACKGROUND

The facts underlying Blackburn's conviction and sentence are not in dispute. On March 16, 2003, Blackburn and another man burglarized an apartment in North Tonawanda, New York, and stole three firearms manufactured outside the state of New York. Blackburn and his accomplice later sold the firearms to a third party.

Blackburn, who had a previous felony conviction from New York State, was charged in state court with burglary, criminal sale of a firearm, grand larceny, petit larceny, and criminal possession of a weapon. These state charges were dismissed after the federal prosecution was instituted.

Blackburn waived indictment and pleaded guilty, pursuant to a written plea agreement with the federal government, to a one-count information charging him with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). In the plea agreement, Blackburn admitted all

---

[1]. Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

the facts necessary to establish the felon-in-possession charge (the offense of conviction) as well as the uncharged offenses of the burglary and sale of the stolen firearms.

The United States Probation Department prepared a Pre–Sentence Report (PSR), recommending a sentencing range under the Guidelines of 46 to 57 months imprisonment. The PSR's calculation included, among other enhancements, a four-level increase over the base offense level pursuant to U.S.S.G. § 2K2.1(b)(5) because the firearms were possessed "in connection with another felony offense"—that other felony offense being the admitted burglary.

Blackburn objected to the application of the § 2K2.1(b)(5) enhancement. He also asked the judge to depart downward with respect to his Criminal History, from Category IV to Category III, on the ground that Category IV overrepresented his criminal history.

The district court found that the § 2K2.1(b)(5) enhancement applied, but imposed a non-Guidelines term of imprisonment of 37 months—9 months below the indicated Guidelines range of 46 to 57 months. The court further imposed a three-year term of supervised release, which included both standard and special conditions.

Blackburn timely appealed from his sentence. At oral argument the government informed us that Blackburn was scheduled to have been released from federal prison two days previously. Later it was confirmed that Blackburn had, in fact, been released from custody and was serving his three-year term of supervised release. By order of our Court, the parties submitted further briefing as to whether Blackburn's release from custody mooted his appeal.

## DISCUSSION

Article III, Section 2 of the United States Constitution limits the federal judicial power to "cases" and "controversies." U.S. Const. art. II, § 2. This "case-or-controversy limitation ... underpins both our standing and our mootness jurisprudence." *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1)[he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 180–81, 120 S.Ct. 693 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Spencer v. Kemna*, 523 U.S. 1, 11, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (internal quotation marks omitted).

■ "In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (citing *Spencer*, 523 U.S. at 7, 118 S.Ct. 978). Thus, as a general rule, "if an event occurs during the course of the proceedings or on appeal 'that makes it impossible for the court to grant any effectual relief whatever to a prevailing party,' we must dismiss the case." *Quattrone*, 402 F.3d at 308 (quoting *Church of Scientology*

*v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (further internal quotation marks and citation omitted)).

■ Several of our sister circuits have held that a challenge to a sentence by a criminal defendant who has completed his prison term but remains subject to supervised release is not moot because the possibility of the district court's reducing the term of supervised release on remand gives the defendant-appellant a continuing stake in the outcome. *See, e.g., United States v. Larson*, 417 F.3d 741, 748 (7th Cir.2005); *United States v. Castro–Rocha*, 323 F.3d 846, 847–48 n. 1 (10th Cir.2003); *United States v. McCoy*, 313 F.3d 561, 564 (D.C.Cir.2002) (en banc); *United States v. Verdin*, 243 F.3d 1174, 1178–79 (9th Cir. 2000).[2] The record before us, however, reveals that the possibility of the district court's imposing a reduced term of supervised release on remand is so remote and speculative that any decision on the merits of Blackburn's claim would amount to a "declar[ation of] principles or rules of law which cannot affect the matter in issue in the case before [us]," *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895), and would thus run afoul of Article III's restriction of our power.

There is every indication in the record that the district court would not reduce Blackburn's term of supervised release on remand. Much to the contrary, the transcript of sentencing reveals the court's design to keep as close an eye on Blackburn as possible for as long as possible. Judge Skretny stated that he had been "searching to latch on to something that tells me that maybe a sentence outside of the Guideline range is the appropriate sentence in this case," but repeatedly expressed his concern about Blackburn's constant failures to help himself and turn his life around when given previous opportunities to do so. The judge asked, "What makes it different now?".

Blackburn replied that his prior bad acts occurred while he was young, stupid and drinking. On his behalf, Blackburn's attorney requested that Blackburn be sentenced to a particular treatment program even though participation in such a program would not yield any "sentencing break." Asking for a "second chance," Blackburn's attorney pledged that Blackburn's actions would demonstrate his commitment to turn his life around. Most significantly, Blackburn's pitch for a non-

**2.** To be sure, "equitable considerations of great weight exist when an individual is incarcerated beyond the proper expiration of his prison term," *United States v. Johnson*, 529 U.S. 53, 60, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000), or has endured unwarranted conditions of confinement, *see Levine v. Apker*, 455 F.3d 71 (2d Cir.2006). Thus we may assume that in the typical case, as in those just cited in the body text and in the dissent, an appellate court could fairly deem it likely enough that, if the merits issue were decided in favor of the defendant, the district court would use its discretion on remand to modify the length of a term of supervised release. In the typical case, a judge does not say quite as much about supervised release as Judge Skretny did here.

The dissent is quite right to observe, then, that "we ... agree that challenges such as

Blackburn's are not always moot." It is equally true, however, that challenges such as Blackburn's are not always *not* moot. As a court empowered to decide concrete cases and not abstract principles, we decide whether the case is justiciable on the record before us. In this case, as we are about to explain, the district court's clear expression of a design to keep as close an eye on Blackburn as possible for as long as possible convinces us that it is so unlikely that the court would actually reduce Blackburn's term of supervised release that a decision on the merits would amount to an advisory opinion. The district court's statements thus distinguish this case from others in which the record does not provide such vivid insight into the sentencing court's concerns. Accordingly, our holding in this case is quite narrow.

Guidelines sentence expressly included a rigorous period of supervised release: ·

He doesn't want a second chance so he can get probation. He doesn't want a second chance so he can skate on this. He's not going to skate, because I'm sure the Court is going to—the Court will have to and will impose a significant supervised release period on him in addition to the incarceration. So, you know, actions speak louder than words.

Having made such a pitch, Blackburn could not have been surprised that the district court imposed the maximum term of supervised release—three years.

The sentence Blackburn requested—and that the court imposed—aimed at decreasing prison time and increasing supervision of Blackburn's actions to see whether he would "make good on [his] promises." The court, of course, ultimately credited Blackburn's statements that he was ready to turn his life around and imposed a term of imprisonment below the indicated Guidelines range. Still, Judge Skretny again expressed concern as to Blackburn's unfavorable track record, described what he wanted to see in Blackburn's behavior and, accordingly, imposed some special conditions of supervised release—for example, completion of a G.E.D. program. The judge warned, "[i]f you don't help yourself, which is where you've been lacking in the past, . . . [i]f you foul up with respect to any of those [special conditions], I'll remember everything that we talked about if you come back before me on a violation." In light of the court's repeated expression of its concern about Blackburn's commitment to follow through with his promised lifestyle changes and its tailoring of the conditions of supervised release to monitor Blackburn's progress, we find it impossible to believe that the court

would reduce the term of supervised release ·to accommodate a change in the Guidelines calculation for the term of imprisonment.

That idea is still more farfetched because the court had already taken into account the possibility that the § 2K2.1(b)(5) enhancement may not apply. At sentencing, the district court acknowledged that there is a split among the circuits that have considered the applicability of the enhancement in similar factual circumstances and that this Court has not addressed the issue. While the court did find that the enhancement applied and calculated the Guidelines range accordingly, it imposed a term of imprisonment nine months below the indicated range, explaining that, among other factors, "[t]here have been some close legal issues that I think needed to be addressed, *that I give you credit for.*" [3] (emphasis added). Although the court stopped short of saying that it would impose the same sentence with or without the enhancement, its statement indicates that the uncertain applicability of the enhancement was factored into the court's sentence. There is, then, even less reason to suppose that the court might reduce the term of supervised release—to which the Guidelines calculations have limited relevance, *see* 18 U.S.C. § 3583(c)—in light of a correction as to the applicability of the § 2K2.1(b)(5) enhancement.

Yet Blackburn argues that the district court might be willing to reduce his term of supervised release to make up for "lost time"—that is, the excess time (if any) that Blackburn served in prison over what the court would have sentenced him to without the application of the challenged enhancement. Of course, the district court *could* do this. *See United States v. Barresi,* 361 F.3d 666, 674–75 (2d Cir.2004). But we

---

**3.** The only other legal issue contested was whether Blackburn should have been in Criminal History Category III or IV. The transcript

of sentencing reveals that Blackburn's belonging in the higher category was not at all a close question.

must again conclude that it is extremely unlikely that the court *would* exercise its discretion in this way, as it would be guided by the United States Supreme Court's cautioning that it is improper to treat terms of imprisonment and supervised release as "interchangeable." *United States v. Johnson*, 529 U.S. 53, 58–59, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). In rejecting a petitioner's argument that his term of supervised release commenced on the date he should have been released from prison (but was not, due to error) rather than his actual date of release, the Court observed that "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release. Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.* at 59, 120 S.Ct. 1114.

While *Johnson* clearly leaves the option open, it nevertheless suggests that to reduce Blackburn's term of supervised release as a means of offsetting excess prison time would disserve the objectives of supervised release.[4] *See id.* Therefore, as unlikely as it is, in light of the statements recounted above, that the district court would be otherwise willing to exercise its discretion in this way, *Johnson's* exposition of "[the supervised release]

statute's purpose and design" would count as another factor militating against reducing Blackburn's term of supervised release, making it more unlikely still that the court would choose to do so. *Id.*

We should note that we by no means wish to add to the burden of district judges to articulate fully and clearly their reasons for imposing particular sentences. *See United States v. Bermingham*, 855 F.2d 925, 932 (2d Cir.1988). Rather, we intend that our decision today should evidence our attention to sentencing judges' careful explanations. When a judge has so thoroughly laid out his concerns as to obviate the need for a remand for any clarification, we will not disregard his statements on the record and remand for imposition of the same sentence. "What we know as men and women we must not forget as judges." *United States v. Roberson*, 917 F.2d 1158, 1161 (9th Cir.1990) (Aldisert, *J.*, dissenting). *Cf. Bermingham*, 855 F.2d at 935 ("Though we think it likely that the District Judge would have imposed a nine-month sentence whether offense level 6 or offense level 4 applied, we cannot, in light of the record, reach that conclusion with sufficient confidence to act upon it.").

## CONCLUSION

Under the post-*Booker* sentencing regime, district courts have a "continuing duty to consider [the Guidelines], along

---

**4.** This reading of *Johnson*, 529 U.S. 53, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000), is in no way inconsistent with our opinion in *United States v. Barresi*, 361 F.3d 666 (2d Cir.2004). In *Barresi* we corrected the district court's erroneous statement that "any reduction in Barressi's supervised-release term could be accomplished only by means of a Guidelines departure." 361 F.3d at 668. We considered only whether "the district court *could have* reduced Barresi's supervised-release term from three years to as low as two, within the range specified by the Guidelines," and answered that question in the affirmative. *Id.* at 675 (emphasis added). We cited *Johnson* for

the proposition that the court would have had no authority to do so had the three-year term been mandated by statute. *See id.* at 674–75 (citing *Johnson*, 529 U.S. at 54–56, 120 S.Ct. 1114). We expressed no opinion as to either the advisability or (what is more important in this case) the likelihood, in light of *Johnson's* exposition of the divergent objectives of incarceration and supervised release, of a court's exercising its discretion to reduce the appellant's supervised release term solely to compensate for his having served an overlong prison term as if the terms were interchangeable.

with the other factors listed in [18 U.S.C. § ] 3553(a)," *United States v. Crosby*, 397 F.3d 103, 111 (2d Cir.2005) (internal quotation marks omitted). The Courts of Appeals likewise have a continuing duty to review the district courts' application of sentencing enhancements. *See United States v. Agudelo*, 414 F.3d 345, 347 (2d Cir.2005). The sentencing issue raised here is an important one, over which there is a split of authority among the circuits.

The importance of the issue, however, and the temptation to decide it can have no bearing on our assessment of its justiciability. *See Friends of the Earth*, 528 U.S. at 213, 120 S.Ct. 693 ("Because the requirement of a continuing case or controversy derives from the Constitution, it may not be ignored when inconvenient.") (Sca-

lia, *J.*, dissenting) (citation omitted). Were we to reach the substantive issue today, we would overstep the bounds of the authority granted us by the federal Constitution. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires."); *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").[5]

---

5. Our reasoning is simple. We find it difficult to believe that our opinion could be so profoundly misunderstood. At the risk of muddying what we believe is clear, we will briefly address a few of the dissent's distortions of our position.

First, as a matter of both law and logic, our assessment of the case's justiciability must precede any substantive analysis. That threshold issue turns on one question: Is the possibility that the district court, in the event of a remand on the merits issue, would choose to exercise its discretion to reduce Blackburn's term of supervised release so unlikely that any decision on the merits would amount to an advisory opinion? That is the only question we consider or decide in our opinion. We make no apologies for our "combing the record" to decide this threshold question. On the contrary, we hope and believe that it is our common practice to make decisions based on the records before us and not in abstraction. We wish to make clear that our repeated reference to the record betrays no covert substantive analysis. Our dissenting colleague misses the point in asserting that our attention to the record reveals that we are engaged in harmless error analysis. What we have concerned ourselves with here is not harmlessness, but fruitlessness. Convinced as we are on the record before us that any substantive decision could yield the prevailing party no effectual relief, we cannot and do not proceed further.

Second, we have neither created any "dicta" nor "misconstrue[d] *Johnson*." We have explicitly and repeatedly acknowledged throughout our opinion that the district court unquestionably would have the power, in the event of a remand, to reduce Blackburn's term of supervised release. *Johnson*, as we have explained, "clearly leaves this option open." In other words, *Johnson* is by no means on all fours with *Blackburn*.

We have already explained how our decision today is in no way inconsistent with *Barresi*. At this point we note only that the distinction of the issue considered in *Barresi* (*i.e.*, whether on remand a district court *could* reduce a non-mandatory term of supervised release without departing from the Guidelines) from the issue we consider today (*i.e.*, whether the court in this case *would* do so) belies the dissent's charge that in *Barresi* "we explicitly rejected the reading of *Johnson* advanced by the majority here." In *Barresi* we had no reason to and did not discuss the portion of *Johnson* that informs our decision in *Blackburn*.

Finally, we have not "ignore[d] important distinctions between direct and collateral consequences of a conviction." We have deliberately refrained from needless analysis of the collateral consequences doctrine because Blackburn has not advanced a colorable argument that any collateral consequence attaches to his having served 37 months in prison, as opposed to some shorter term. (We do not

SOTOMAYOR, Circuit Judge, dissenting:

The majority gleans from the record in this case the assurance that the district court would have imposed the same term of supervised release regardless of whether the § 2K2.1(b)(5) enhancement applies in calculating Blackburn's Guidelines sentence. The record is more equivocal than the majority claims, however, and the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and our cases applying it have made clear that we should not speculate as to what a district court may do in resentencing a defendant except in very limited circumstances that are not present here. I find no clear indication in the record of the sentencing proceeding that the district court would adhere to the same sentence if we remanded this case. I would conclude, therefore, that any error in calculating Blackburn's Guidelines sentence was not harmless and that Blackburn's claim is not moot. Because I would reach the merits of this appeal, I respectfully dissent.

The majority claims, in dicta, that the Supreme Court's ruling in *United States v. Johnson*, 529 U.S. 53, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000), "suggests that to reduce Blackburn's term of supervised re-

lease as a means of offsetting excess prison time would disserve the objectives of supervised release." The majority misconstrues *Johnson*, and I write on this issue because I do not want the majority's dicta to create an improper suggestion to district courts. The Court's statement in *Johnson* that "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release" was made in the context of its conclusion that incarceration and supervised release are not interchangeable where the supervised-release term is mandatory.[1] *See* 539 U.S. at 59–60, 123 S.Ct. 2142. *Johnson* stands only for the limited proposition that supervised release commences upon a defendant's release from prison and that any reduction in a defendant's *mandatory* term of supervised release for excess time served results not from the automatic operation of statute, but solely from the sentencing court's exercise of discretion under 28 U.S.C. § 3583(e) to reduce supervised-release terms.[2] *Id.* at 60, 123 S.Ct. 2142.

In *United States v. Barresi*, 361 F.3d 666 (2d Cir.2004), we explicitly rejected the reading of *Johnson* advanced by the majority here—that *Johnson* sweeps more broadly than its holding. We acknowledged that "if the three-year supervised-release term imposed on Barresi had been man-

---

consider the potential consequences for Blackburn should he violate his supervised release, as that, like a future criminal conviction, is a possibility Blackburn is "able—and indeed required by law—to prevent ... from occurring." *Spencer v. Kemna*, 523 U.S. 1, 15, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (internal quotation marks omitted).) The doctrine does not apply to the one colorable argument Blackburn has that his case is not moot—that being the possibility that his term of supervised release (a direct consequence of his conviction) would be reduced in the event of a remand.

1. The gist of the Court's analysis in *Johnson* was that where Congress has mandated a

particular term of supervised release, which serves ends distinct from those served by incarceration, Congress's objective would be unfulfilled if a court used excess prison time to offset a supervised-release term. Nothing in *Johnson* speaks to a district court's determination of what discretionary term of supervised release is appropriate in a particular case.

2. The Court noted that even where the term of supervised release is mandated by statute, a district court "may terminate an individual's supervised release obligations 'at any time after the expiration of one year of supervised release.'" 529 U.S. at 60, 120 S.Ct. 1114 (quoting 18 U.S.C. § 3583(e)(1)).

dated by statute, the district court would have been correct that Barresi's supervised-release term could not be reduced [at resentencing] to compensate for extra time spent in prison." *Id.* at 674 (citing *Johnson,* 529 U.S. at 54–56, 120 S.Ct. 1114). We nevertheless remanded the case for resentencing although Barresi had already completed his prison term because he was serving a non-mandatory term of supervised release that the district court had discretion to reduce. *Id.* at 675. We instructed the district court to determine first what sentence of incarceration it would have imposed if it had not considered impermissible factors in upwardly departing from the Guidelines sentence. We also directed that if the district court would have imposed a prison term less than the sentence actually imposed, it "should then consider whether it wishes to exercise its discretion to reduce Barresi's supervised-release term ... in order to compensate for the fact that Barresi completed his ... prison term before his resentencing took place." *Id.* Barresi thus stands unequivocally for the proposition that, when resentencing a defendant who has completed his or her term of incarceration, a district court may compensate for any excess time the defendant was incarcerated by exercising its discretion to reduce the defendant's non-mandatory term

of supervised release.[3] *Barresi* also makes clear that a district court may compensate a defendant who has served excess prison time and is serving a non-mandatory supervised-release term by either resentencing the defendant or exercising its authority under § 3583(e)(1).

This case is substantially similar to *Barresi.* The statute governing Blackburn's sentence, 18 U.S.C. § 924(a)(2), does not provide a mandatory minimum term of supervised release. Because the maximum term of incarceration under § 924(a)(2) is ten years, Blackburn's offense was a Class C felony, 18 U.S.C. § 3559(a)(3). The longest term of supervised release that the district court could have imposed was three years, 18 U.S.C. § 3583(b)(2), but the court could also have imposed a lesser term or no term at all under the post-*Booker* sentencing regime, and could do so now. If we were we to reach the merits and hold that the four-level enhancement under U.S.S.G. § 2K2.1(b)(5) does not apply in this case, under *Barresi* (and *Johnson* ), the district court could use its discretion to reduce Blackburn's term of supervised release to compensate him for any excess time he served in prison. *Cf. Levine v. Apker,* 455 F.3d 71, 76 (2d Cir.2006) (holding that a habeas petitioner's challenge to a policy

---

**3.** Nothing in *Barresi* is inconsistent with the holding of *United States v. Mercurris,* 192 F.3d 290 (2d Cir.1999). In *Mercurris,* although the defendant had been sentenced to a term of supervised release following his incarceration, he was deported upon completion of his prison term. *Id.* at 293. We found the defendant's challenge to the length of his sentence moot in the light of his release from prison because, *inter alia,* he had "only a quixotic chance of legally returning to the United States." *Id.* at 294. *Mercurris* thus stands for the limited proposition that a defendant who is deported following his or her release from prison and who faces a remote chance of ever being subject to the supervised-release portion of his or her sentence cannot chal-

lenge the length of his or her sentence. *See United States v. DeLeon,* 444 F.3d 41, 55–56 (1st Cir.2006) (citing *Mercurris* for the proposition that where a defendant is sentenced to a term of supervised release but deported upon completion of a term of incarceration, a claim of sentencing error is moot in the light of the remote chance that he or she will return legally to the United States and be subject to supervised release); *cf. United States v. Lares–Meraz,* 452 F.3d 352, 354–56 (5th Cir.2006) (finding that the *Booker* challenge of a defendant who was sentenced to a supervised-release term but deported upon completion of his incarceration was not moot, but that the error was harmless).

and rule of the Bureau of Prisons regarding the maximum time a prisoner could serve in a community corrections center was not moot where the petitioner had completed his prison term and was serving a term of supervised release because the district court "might," on remand, "modify the length of [petitioner's] supervised release").

The majority acknowledges that the district court could reduce Blackburn's supervised-release term at resentencing under *Johnson* and *Barresi*, and we therefore agree that challenges such as Blackburn's are not always moot.[4] It contends, however, that the record is clear that the district court would have imposed the maximum term of supervised release regardless of the applicability of the § 2K2.1(b)(5) enhancement. Believing that it is unlikely that the district court would reduce Blackburn's supervised-release term on remand, the majority concludes that Blackburn's claim is moot. I disagree with both of the majority's conclusions: that the concept of mootness, rather than harmless error, should guide our analysis and that any sentencing error did not affect Blackburn's sentence.

Given the majority's acknowledgment that the district court *could* resentence Blackburn to a reduced supervised-release term, its ultimate conclusion should be not that the case is moot, but that any error in the Guidelines calculation was harmless.

This is effectively the analysis the majority undertakes in combing the record of the sentencing proceeding, and it is the analysis we have found appropriate in considering *Booker* errors, *see, e.g., United States v. Lake*, 419 F.3d 111, 113–14 (2d Cir. 2005); *United States v. Sharpley*, 399 F.3d 123, 127 (2d Cir.2005). The majority, however, conflates its determination that any sentencing error in this case did not affect the proceedings—a harmless-error analysis—with the conclusion that relief is so remote and speculative as to make the case moot. In doing so, it ignores important distinctions between direct and collateral consequences of a conviction, on the one hand, and relief that is unlikely as opposed to remote, on the other.

In *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), the Supreme Court concluded that a habeas petitioner's challenge to an order revoking his parole was moot where the petitioner completed the entire term of imprisonment underlying the parole revocation before the district court ruled on his habeas petition and could not establish a "collateral consequence" of his conviction. *Id.* at 7, 14–16. The Court rejected as too speculative several purported collateral consequences that involved two contingent events: (1) whether the subsequent collateral proceeding would ever occur, and (2) whether the revocation would be used against the defendant in that proceeding.[5]

---

4. Every federal court of appeals that has considered the issue has held that a challenge to the length of a defendant's sentence is not moot when the defendant has completed a term of incarceration but is serving a nonmandatory term of supervised release. *See Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir.2006); *United States v. Allen*, 434 F.3d 1166, 1170 (9th Cir.2006); *United States v. Larson*, 417 F.3d 741, 747 (7th Cir.2005); *United States v. Castro–Rocha*, 323 F.3d 846, 847 n. 1 (10th Cir.2003); *United States v. McCoy*, 313 F.3d 561, 564 (D.C.Cir.2002) (en banc); *United States v. Molak*, 276 F.3d 45,

48–49 (1st Cir.2002); *Dawson v. Scott*, 50 F.3d 884, 886 n. 2 (11th Cir.1995); *see also Jago v. Van Curen*, 454 U.S. 14, 21 n. 3, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981) (per curiam) (finding case not moot where petitioner was on parole).

5. One purported collateral consequence considered in *Spencer*—whether the petitioner's revocation could be used against him in a future parole proceeding—was "no longer contingent" because petitioner had been convicted of another crime and was serving a prison term at the time the Supreme Court

*Id.* at 15–16. *Spencer* does not control the resolution of this case because Blackburn's entire sentence has not expired and his supervised-release term is a direct consequence of his conviction. Moreover, the potential relief here is also direct, rather than contingent or collateral, because if we disagreed with the district court's Guidelines ruling, we would remand for resentencing. The majority, however, appears to import implicitly the analysis of *Spencer* into this case by claiming that a ruling favorable to Blackburn on remand is "so remote and speculative" as to make the case moot. While the majority could take the reasonable, albeit erroneous, position that relief on remand is so *unlikely* as to make any error harmless, relief is hardly "remote" or "speculative" here, where a direct consequence of Blackburn's conviction is at issue.

In short, the restrictions imposed by the terms of Blackburn's supervised-release term constitute a concrete injury, caused by his conviction and sentence, and redressable (at least in part) by a resentencing proceeding. *See Spencer*, 523 U.S. at 7, 118 S.Ct. 978. The majority therefore errs in determining that Blackburn's claim is moot rather than concluding that any error was harmless. In any event, the record does not support the view that the district court's Guidelines calculation, if erroneous, was harmless.

Although the district court noted the disagreement among the courts of appeals as to the applicability of § 2K2.1(b)(5) and stated that it gave Blackburn "credit" at sentencing for "some close legal issues," the district court nonetheless applied the enhancement in calculating Blackburn's offense level, which exposed Blackburn to a Guidelines range of 46 to 57 months' imprisonment. The district court sentenced Blackburn to 37 months' imprisonment—the top of the Guidelines range that would have applied without the four-level enhancement. But we should not conclude that the district court engaged in a disingenuous sleight of hand by applying the enhancement in its Guidelines calculation only to remove the enhancement in its post-*Booker* sentence. Although the sentence imposed may reflect the district court's misgivings or uncertainty about the enhancement, the court nonetheless included the enhancement in its Guidelines calculation. The most reasonable inference from the sentencing transcript, in my view, is that the district court gave Blackburn *some* credit for what it perceived as a "close legal issue[ ]," but that the nine-month departure from Blackburn's Guidelines range cannot be *completely* attributed to this issue. The district court clearly stated on the record that "[t]here have been *some* close legal *issues* that I think needed to be addressed, that I give you credit for." The

heard his appeal. 523 U.S. at 14, 118 S.Ct. 978. The Court rejected this argument against mootness, noting that the state parole statute gives the parole board almost "unlimited discretion" in determining whether to grant parole release and that a prior parole revocation is therefore "simply one factor, among many" to be considered by the parole board. *Id.* The potential use of the petitioner's revocation in a future parole proceeding at issue in *Spencer* was a *collateral* consequence because the petitioner's sentence had expired. By contrast, the length of Blackburn's sentence is a *direct* consequence of his

conviction. Moreover, putting this distinction aside, while the Guidelines are advisory post-*Booker*, the district court's discretion in imposing sentence is cabined by the factors set forth at § 3553(a) and is therefore far from "unlimited." *See United States v. Hamdi*, 432 F.3d 115, 118–21 (2d Cir.2005) (finding challenge to length of sentence by defendant who had completed his sentence not moot where collateral consequence was availability of a discretionary waiver of inadmissibility and a lower sentence "would bear on two of the three ... criteria" for the exercise of discretion).

district court thus indicated that several factors figured into its decision to impose a non-Guidelines sentence of 37 months. I take the district court at its word that the § 2K2.1(b)(5) enhancement was not the sole factor influencing its decision to impose a non-Guidelines sentence. It therefore appears possible—whether likely or not—that the district court may have sentenced Blackburn to a lesser term of incarceration had it not imposed the enhancement and that Blackburn's sentence would have been "nontrivially" lower than 37 months. *See United States v. Crosby,* 397 F.3d 103, 118 (2d Cir.2005). The majority declines to challenge this reading of the sentencing transcript, although it acknowledges that Blackburn's sentence reflects "the uncertain applicability of the enhancement." At the very least, the sentencing transcript does not give us adequate assurance that the district court would have imposed the same prison term regardless of § 2K2.1(b)(5)'s applicability. It is this lack of assurance with respect to Blackburn's prison term that makes this appeal not moot because, as we held in *Barresi,* the district court on remand could exercise its discretion to reduce Blackburn's supervised-release term to compensate for any excess prison time.

Nor does the record reflect the district court's unambiguous intent to impose a three-year term of supervised release notwithstanding a potential error in calculating Blackburn's Guidelines range. The majority divines from the district court's concern that Blackburn change his lifestyle a sufficiently clear expression of intent that it would not reduce Blackburn's term of supervised release to compensate for the fact that Blackburn completed his prison sentence before resentencing could occur. This conclusion is wholly unwarranted. Our recent Sixth Amendment jurisprudence teaches us that it is not the role of appellate courts to predict what a district court may do when resentencing a defendant. As we noted in *Crosby,* "[p]erhaps in some cases an appellate court could make an educated guess as to the likely outcome of a remand [for resentencing], but that guess might be wrong, absent a clear indication at the original sentencing supporting the inference that the same sentence would have been imposed . . .," 397 F.3d at 117–18.

I acknowledge that a sentencing error would be harmless, and Blackburn's claim might be moot, if the district court had sentenced Blackburn to a mandatory minimum sentence. *See Sharpley,* 399 F.3d at 126–27 (finding district court's use of the Guidelines as a mandatory regime harmless error because the court imposed the mandatory minimum sentence). It is less clear that a sentencing error would be harmless, or the claim moot, if the district court, after considering the factors set forth at 18 U.S.C. § 3553(a), made clear that it would impose the same prison sentence or term of supervised release regardless of the propriety of its Guidelines calculation. *See United States v. Bah,* 439 F.3d 423, 431 (8th Cir.2006) (declining to find a post-*Booker* Guidelines calculation error harmless in the light of the district court's responsibility to determine the appropriate Guidelines range even though the district court announced an identical alternative sentence that was not based on an alternative Guidelines calculation but was intended to cover any potential calculation errors); *cf. Crosby,* 397 F.3d at 111–12 (noting that "to fulfill th[e] statutory duty to 'consider' the Guidelines, a sentencing judge will normally have to determine the applicable Guidelines range" except in some circumstances involving difficult factual determinations, such as complex loss calculations, or unclear policy statements regarding the availability of a departure); *United States v. Rattoballi,* 452 F.3d 127, 132–33

(2d Cir.2006) ("[T]he guidelines cannot be called just 'another factor' in the statutory list, 18 U.S.C. § 3553(a), because they are the only integration of the multiple factors and, with important exceptions, their calculations were based upon the actual sentences of many judges." (internal quotation marks omitted)). Here, the majority acknowledges that the district court never stated that it would impose the same sentence regardless of the applicability of the § 2K2.1(b)(5) enhancement. It nevertheless goes on to make the very "educated guess" we found objectionable in *Crosby* in concluding not that any error was harmless, but that Blackburn's claim is moot. I do not think that the district court expressed its intentions so clearly "as to obviate the need for a remand for any clarification."

As we have noted in the Sixth Amendment context, "it will usually not be easy to divine with certainty that the sentencing judge would have imposed the same sentence" notwithstanding error. *Lake,* 419 F.3d at 113. I do not think this is one of the " 'rare' case[s] ... where we can confidently say that a [potential] sentencing error was harmless." [6] *Id.* at 114. "The applicable guideline range provides the frame of reference against which the judge chooses an appropriate sentence," *id.,* and I cannot conclude that the range identified by the district court, if erroneous, did not affect Blackburn's sentence. Instead, because this case is not moot in the light of *Barresi* and the sentencing transcript gives us no clear indication that the district court would have imposed the same prison term and the same period of supervised release regardless of any error in

calculating Blackburn's Guidelines range, I would conclude that any sentencing error was not harmless.

Because I think we should reach the merits of Blackburn's appeal, I respectfully dissent from the dismissal of this appeal.

---

6. In *Lake,* we noted the difficulty in labeling a *Booker* error harmless given that the Guidelines are now advisory and that district courts must consider all of the factors set forth at 28 U.S.C. § 3553(a) in imposing sentence. 419 F.3d at 114. Here, it is difficult to determine that the district court considered the length of Blackburn's supervised-release term to be of such independent significance that the court would have imposed the same term even if its Guidelines calculation was erroneous and the prison term it imposed was therefore excessive.