# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AMIRE ARMSTRONG-NICHOLS, a/k/a AMIRE
AZURE ARMSTRONG-NICHOLS,

        Defendant-Appellant.

UNPUBLISHED
April 12, 2016

No. 323681
Wayne Circuit Court
LC No. 14-002961-FC

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his sentence following jury trial convictions of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b.[1] The trial court sentenced defendant, as a habitual second offender (MCL 769.10), to 38 to 90 months' imprisonment for the felon-in-possession conviction and two years' imprisonment for the felony-firearm conviction. We remand to the trial court for further proceedings consistent with this opinion.

On August 18, 2013, Rico Rombus shot Jeffery Staples on Bliss Street in Detroit. Several people were gathered in the street talking and Staples and Rombus had been playing dice amongst the crowd when the two began arguing. Friends broke up their first fight.

Defendant testified at trial that he was a felon, that he was not supposed to have a firearm, but that he did have a firearm in his possession on August 18, 2013. Defendant testified that when he stepped in to break up the fight between Rombus and Staples, Rombus "snatched" the gun from his hoody pocket and used it to shoot Staples. Antonio Baker, a witness to the shooting, first testified that Rombus took the gun from defendant, but then admitted that he did not actually see Rombus's hand go into defendant's jacket. Donald Sistrunk, Staples's brother, testified that he saw defendant hand Rombus the gun before Rombus used it to shoot Staples. However, he did not hear defendant tell Rombus to shoot Staples.

---

[1] Defendant does not challenge his convictions on appeal.

In any event, when Staples and Rombus began arguing after their initial fight was broken up, Rombus shot Staples with a gun he had obtained from defendant. He fired one shot at Staples's chest, and two more shots as Staples ran away. Staples was pronounced dead on arrival at the hospital, and Dr. Jeffery Hudson, the Wayne County Assistant Medical Examiner, testified that he performed an autopsy and concluded that Staples died from a single gunshot wound to the chest. Dr. Hudson testified that the manner of death was homicide. The jury found defendant guilty of felon in possession and felony firearm and acquitted him of first-degree premeditated murder (MCL 750.316(1)(a)).

At sentencing, the trial court assessed 25 points for offense variable (OV) 1, 100 points for OV 3, and one point for OV 12. As a result, defendant's OV score was 126 points, and the sentencing guidelines range was 19 to 38 months. The court sentenced defendant, as a second habitual offender, to 38 to 90 months' imprisonment for the felon-in-possession conviction.

Defendant first argues on appeal that he is entitled to resentencing because the trial court should have assessed zero points for OVs 1, 3, and 12, and the scoring error altered the guidelines range. He asserts that, because he was acquitted of first-degree murder, the court could not assess points for OVs 1 and 3 in accordance with *People v McGraw*, 484 Mich 120; 771 NW2d 655 (2009). Defendant also argues that the court should not have assessed one point for OV 12 because felony-firearm cannot be considered a contemporaneous criminal act for purposes of scoring OV 12. Defendant additionally argues that he is entitled to resentencing because his Fifth and Sixth Amendment rights were violated when the trial court used facts not found by a jury or proven beyond a reasonable doubt to determine defendant's sentencing guidelines range. We agree with defendant's constitutional argument.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

"A Sixth Amendment challenge presents a question of constitutional law that this Court reviews de novo." *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 321303); slip op at 6, quoting *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015).

In *Lockridge*, the Supreme Court considered the application of the rules set forth in *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), and *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), to Michigan's sentencing guidelines, and "held that Michigan's sentencing scheme violates the Sixth Amendment right to a jury trial because it requires 'judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under *Alleyne*.' " *Stokes*, ___ Mich App ___; slip op at 6, quoting *Lockridge*, 498 Mich at 364. The *Lockridge* Court ruled that Michigan's sentencing guidelines are advisory only. *Id*. at 399. However, "a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence." *Id*. at 365.

OV 1 applies to crimes against public safety. MCL 777.22(5). Felon-in-possession is a crime against public safety. MCL 777.16m. A trial court should assess 25 points for OV 1 where "a firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon." MCL 777.31(1)(a). Further, "[i]n multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points." MCL 777.31(2)(b); *People v Morson*, 471 Mich 248, 257; 685 NW2d 203 (2004). OV 1 is an offense-specific variable. *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014).

Here, defendant's sentencing offense was felon-in-possession. He argues that because the jury acquitted him of first-degree murder[2], and because he no longer possessed or controlled the firearm when Rombus shot Staples, the gun was not discharged in relation to defendant's sentencing offense. Therefore, the trial court should not have assessed 25 points for OV 1.

Because defendant did not object to the score for OV 1 at sentencing, the trial court did not provide a reason for assessing 25 points. However, it is clear from the record that defendant did not admit to a discharging the firearm at or toward a human being, no one at trial testified that he did so, and the jury did not find that he did so. And, the jury did not find, beyond a reasonable doubt, that defendant aided and abetted Staples's murder. Moreover, the jury's finding defendant guilty of felon in possession or felony firearm does not require a finding that defendant discharged a firearm at or toward a human being.

The elements of felon-in-possession are: (1) the defendant possessed a firearm, (2) the defendant was convicted of a specified felony, and (3) the defendant's right to possess the firearm had not been restored. MCL 750.224f. See also *People v Perkins*, 262 Mich App 267, 270-271; 686 NW2d 237 (2004), abrogated on other grounds by *People v Smith-Anthony*, 494 Mich 669 (2013). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011), quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). To assess 25 points for OV 1, given the absence of an admission of relevant facts by defendant or a finding of the requisite facts by the jury, the trial court would have had to have determined, by a preponderance of the evidence, that defendant handed Rombus the gun he used to shoot Staples. The jury would not have had to find this fact, beyond a reasonable doubt, to convict defendant of felon-in-possession or felony-firearm, and the jury found defendant not guilty of first-degree murder. Further, at trial, defendant specifically denied handing Rombus the gun. Thus, the trial court used facts not admitted by defendant or found by the jury beyond a reasonable doubt to score OV 1 in contravention of *Lockridge*.

OV 3 also applies to crimes against public safety. MCL 777.22(5). The trial court may assess 50 or 100 points for OV 3 if "[a] victim was killed." MCL 777.33(1)(a) and (b). One hundred points should be assessed "if death results from the commission of a crime and homicide is not the sentencing offense." MCL 777.33(2)(b). Further, "[i]n multiple offender

---

[2] The court also instructed the jury regarding second-degree murder, MCL 750.317.

cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points." MCL 777.33(2)(a).

For death to "result from" the commission of a crime, the crime need not have been the proximate cause of the victim's death. *People v Laidler*, 491 Mich 339, 346; 817 NW2d 517 (2012). Instead, the crime must be a factual cause of the victim's death. *Id*. at 344-345. In other words, "[i]n determining whether a defendant's conduct is a factual cause of the result, one must ask, 'but for' the defendant's conduct, would the result have occurred?" *Id*. at 345 (quotation marks and citation omitted).

Here again, because defendant did not challenge the score for OV 3 at sentencing, the trial court did not provide its reasoning for the score. However, the trial court said, "[B]ecause of the fact that you are the one who brought the gun into the situation, if you had taken the gun out of your pocket, sat it on the porch and then went down into the street to break up the fight, if I accept what you testified at trial to be true, you had that choice." The trial court also stated, "All you had to do was take the gun out of your pocket and leave it on the porch and Rico wouldn't be looking at going away for life, if he's still alive." Homicide was not defendant's sentencing offense. And, the jury did not have to find, beyond a reasonable doubt, that Staples died to convict defendant of felon-in-possession or felony-firearm. At trial, when asked why he wanted to get away from the crime scene after Staples was shot, defendant said, "I was shocked. Someone was just killed." But, when asked if, after the shooting, he knew Staples was dead, defendant said no. This conflicting testimony is not enough to be considered an admission by defendant that Staples died. Thus, the trial court used facts not admitted by defendant or found by the jury beyond a reasonable doubt to score OV 3.

OV 12 applies to crimes against public safety. MCL 777.22(5). A trial court may assess one point for OV 12 if "[o]ne contemporaneous felonious criminal act involving any other crime was committed." MCL 777.42(1)(f). To be contemporaneous, the act must have occurred within 24 hours of the sentencing offense, and the act must not result in a separate conviction. MCL 777.42(2)(a)(*i*) and (*ii*); *People v Light*, 290 Mich App 717, 722; 803 NW2d 720 (2010). A trial court cannot consider felony-firearm to score OV 12. MCL 777.42(2)(b). Thus, to assess one point for OV 12, the court would have had to find, by a preponderance of the evidence, that defendant handed Rombus the gun. Again, the jury did not have to find this fact, beyond a reasonable doubt, to convict defendant of felon-in-possession or felony-firearm, and defendant specifically denied this.

In sum, the trial court committed a *Lockridge* error by relying on facts not admitted by defendant or found by the jury to score these OVs, which resulted in an increase in defendant's minimum sentence guidelines range. A constitutional error that is not structural will be subject to the harmless beyond a reasonable doubt test. *Stokes*, ___ Mich App at ___; slip op at 9-10. "A *Lockridge* error is not structural, and thus, must be reviewed for harmless error." *Id*. at ___; slip op at 10.

-4-

To determine if the error here is harmless, the *Crosby*[3] procedure must be followed[4]. *Id*. As the *Lockridge* Court explained:

> [I]n cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing. [*Lockridge*, 498 Mich at 397, citing *United States v Crosby*, 397 F3d 103, 118 (CA 2, 2005).]

The specific procedure is as follows:

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the constitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Id*. at 398 (citations and quotation marks omitted).]

At sentencing, the trial court did not state defendant's sentencing guidelines range, but the unofficial SIR prepared by the probation officer provides a range of 19 to 38 months. Further, the trial court stated that it was sentencing defendant at the top of the range, and sentenced defendant to a minimum term of 38 months' imprisonment. Had the trial court assessed zero points for OVs 1, 3 and 12, defendant's sentencing guidelines range would have been 5 to 23 months, or 5 to 28 months, if sentenced as a second habitual offender. On remand, the trial court is directed to follow the *Crosby* procedure and determine whether it would have imposed a materially different sentence but for the constitutional error.

---

[3] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

[4] The *Stokes* Court explained that in *United States v Lake*, 419 F3d 111, 113-114, n 2 (CA 2, 2005), the Second Circuit Court of Appeals "held that, with respect to preserved sentencing errors of the type now at issue, the *Crosby* procedure does not apply. *Stokes* ___ Mich App at ___; slip op at 10. However, the *Stokes* Court concluded that "given that our Supreme Court specifically expressed its 'agreement with' the quoted analysis stated in *Crosby*, we believe our Supreme Court intended that the *Crosby* procedure would apply to both preserved and unpreserved errors." *Id*. at ___; slip op at 11.

Next, defendant argues on appeal that he is entitled to have three sentences/paragraphs containing irrelevant and incorrect information stricken from his presentence report (PSIR). We disagree with respect to the first two statements but agree with respect to the third.

Defendant did not challenge the accuracy and relevancy of information in the PSIR at sentencing. When asked, specifically, if he had any additions, corrections, or deletions to the PSIR, defense counsel said no. Further, this Court denied defendant's motion to remand. *People v Armstrong-Nichols*, unpublished order of the Court of Appeals, entered July 22, 2105 (Docket No. 323681). Nonetheless, because defendant raised this issue in his motion to remand, we find that he did not waive appellate review.

"The Department of Corrections relies on the information contained in the PSIR to make critical decisions regarding a defendant's status." *People v Lloyd*, 284 Mich App 703, 705-706; 774 NW2d 347 (2009). "At a sentencing hearing, either party may challenge the accuracy or relevancy of information contained in the PSIR." *Id*. at 705, citing MCL 771.14(6). It is presumed that the information in the PSIR is accurate. *Id*. If the defendant raises an effective challenge, the prosecution has to prove, by a preponderance of the evidence, that the information is accurate. *Id*.

A trial court is required to respond when a party challenges the accuracy of the PSIR. *Id*., citing *People v Uphaus (On Remand)*, 278 Mich App 174, 182; 748 NW2d 899 (2008). If the trial court determines that information in the PSIR is inaccurate or irrelevant, the trial court must correct or strike the information from the report. *People v Waclawski*, 286 Mich App 634, 690; 780 NW2d 321 (2009), citing MCL 771.14(6) and MCR 6.425(E)(2)(a). Further, "[w]hen a sentencing court disregards information challenged as inaccurate, the court effectively determines that the information is irrelevant and the defendant is entitled to have the information stricken from the report." *Id*., citing *People v Spanke*, 254 Mich App 642, 649; 658 NW2d 504 (2003).

First, defendant challenges the accuracy of the following statement in the evaluation and plan section of the PSIR: "The within offense resulted in a homicide, however, the defendant was found not guilty by jury." A PSIR must include "a complete description of the offense and the circumstances surrounding it." MCR 6.425(A)(1)(b). One could conclude, from the evidence presented at trial, that defendant's choice to possess a gun, and carry that gun near a fight, resulted in a homicide. These were the circumstances surrounding the offense. Because only inaccurate or irrelevant information must be stricken from the PSIR, *Waclawski*, 286 Mich App at 690, and the challenged statement is not irrelevant or inaccurate, these statements were properly included in the PSIR.

Next, defendant challenges the following information from the agent's description in the PSIR: " '[S]hots in progress.' They made the location and discovered a blood trail from 8086 Bliss to 8151 Bliss. Officers discovered the victim, Jeffery Staples, age 18, was privately conveyed to the hospital by his mother, Patricia Johnson. Scout 7-71 was dispatched to Detroit Receiving Hospital who confirmed there was a shooting [at] the above location and the victim was fatally wounded and was dead on arrival. The victim's remains were conveyed to the W.C.M.E. An autopsy was performed by Dr. Diaz, who ruled the manner of death was a gunshot wound and the cause of death is homicide." He alleges that this information is irrelevant

to his sentencing offense. Again, the PSIR must include "a complete description of the offense and the circumstances surrounding it." MCR 6.425(A)(1)(b). These statements describe the circumstances surrounding the offense; specifically, that Rombus used defendant's gun to shoot and kill Staples. Further, these facts are supported by evidence presented at trial. These statements are, therefore, relevant to defendant's sentencing offense.

Finally, defendant challenges the following statement included in the agent's description of the events: "The defendant retrieved a pistol from his jacket pocket and gave it to Rico Rambus [sic], and stated, 'shoot him.' " He argues that no evidence was presented at trial that defendant made this statement, and that the trial court disregarded this information when determining his sentence.

The PSIR indicates that the information in the agent's description of the offense "was garnered from a Detroit Police Investigator's Report." There was no evidence presented at trial, or in the preliminary examination, that defendant told Rombus to shoot Staples. When asked, at trial, if he heard defendant say "shoot him," Sistrunk said "no." Defendant also specifically denied, in his testimony, that he told Rombus to shoot Staples. On remand, the trial court is to remove this statement from the PSIR.

Next, defendant argues on appeal that he was denied the effective assistance of counsel when his attorney failed to object to the scoring errors for OVs 1, 3, and 12, and failed to make a formal objection to the irrelevant and incorrect information in the PSIR. We disagree.

Generally, to preserve a claim of ineffective assistance of counsel, a defendant must file a motion for a new trial or a *Ginther*[5] hearing in the trial court to establish evidence supporting the claim. *People v Sabin* (*On Second Remand*), 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Defendant did not raise this issue in a motion for a new trial or a *Ginther* hearing in the trial court. Although defendant filed a motion to remand in this Court which included these claims of ineffective assistance of counsel, he did not specifically request a new trial or *Ginther* hearing. Regardless, this Court denied defendant's motion to remand. Therefore, defendant has not preserved this issue for appeal.

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews a trial court's findings of fact for clear error, and reviews questions of constitutional law de novo. *Id*. The defendant must establish a factual predicate for the ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Because defendant did not seek a new trial or *Ginther* hearing in the trial court, and this Court denied his motion to remand, this Court's review is limited to the appellate record. *Sabin* (*On Second Remand*), 242 Mich App at 658-659.

To evaluate a claim of ineffective assistance of counsel, this Court uses the standard established in *Strickland v Washington* 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *Hoag*, 460 Mich at 5-6, citing *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). For a

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

successful claim of ineffective assistance of counsel, the defendant must show: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The effective assistance of counsel is presumed. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). Further, the defendant must overcome the presumption that defense counsel's alleged actions were simply sound trial strategy. *Trakhtenberg*, 493 Mich at 52.

Both of defendant's claims of ineffective assistance of counsel lack merit. Defendant's objection to the scoring errors, as well as the first two challenged statements in the PSIR, would have been futile (according to the law that existed at that time). Defense counsel need not make futile or meritless objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Although defense counsel's performance may have fallen below an objective standard of reasonableness when he failed to object to the portion of the agent's description in the PSIR that said defendant handed Rombus the gun and said "shoot him," defendant does not explain how his sentence would have been different had the PSIR been corrected. In fact, in his brief on appeal, defendant claims that the trial court indicated that it was basing his sentence on defendant's version of the incident, and that the court apparently disregarded these statements in the presentence report. Further, the motion to remand preserved this issue for appeal, and this Court will remand to the trial court for this statement to be removed from this PSIR. When removed, the statement will not affect defendant's security classification or parole eligibility.

We remand to the trial court to strike the statement that defendant told Rombus to shoot Staples from the PSIR, and to follow the *Crosby* procedure to determine whether it would have imposed a materially different sentence but for the constitutional error. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto